## Case No. 16,635.

### UNITED STATES v. WALSH.

[1 Deady, 281; [2] 1 Abb. U. S. 66; 1 Am. Law T. Rep. U. S. Cts. 45; 6 Int. Rev. Rec. 212.]

District Court, D. Oregon. July 23, 1867.

ARREST IN CIVIL CASES — FRAUD — IMPRISONMENT FOR DEBT — CONSTITUTIONAL LAW — VIOLATION OF INTERNAL REVENUE LAWS—ACTION FOR PENALTY.

1. The court has not judicial knowledge whether there are matches known to the arts and commerce other than those called "lucifer" or "friction," and therefore not subject to duty.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]
[2] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

2. Where the cause of action and arrest are identical, a verified complaint is a sufficient affidavit upon which to allow an order of arrest.
[Cited in Hanson v. Fowle. Case No. 6,041; Neff v. Pennoyer, Id. 10,083; U. S. v. Griswold, Id. 15,266; McDonald v. Cooper, 32 Fed. 751.]

3. The conditions and restrictions imposed by state law upon the allowance of imprisonment for debt, subsequent to the act of January 14, 1841 (5 Stat. 410), are not adopted by such act; and, therefore, not in force in the United States courts, unless adopted as a rule thereof.

4. The clause in the constitution of the state of Oregon (article 1, § 19), prohibiting "imprisonment for debt, except in cases of fraud," construed not to apply to an action for a tort or penalty, but only to cases of debt arising upon contract, express or implied.
[Quoted in Norman v. Manciette. Case No. 10,300; Hanson v. Fowle. Id. 6,041. Cited in Re Sanborn, 52 Fed. 585.]
[Cited in Kennedy v. People, 122 Ill. 653, 13 N. E. 213; Ex parte Bergman (Nev.) 4 Pac. 216.]

5. A manufacturer of matches who disposes of the same without stamping them, as required by law, thereby commits a fraud upon the United States, and in an action by the latter to recover a penalty for such violation, the defendant may be arrested as in an action for a debt incurred by fraud.

This was an action brought to recover sixteen penalties of $50 each of the defendant [J. F. Walsh] for making, preparing and selling lucifer matches, without stamping the same, contrary to the internal revenue act of July 13, 1866 (14 Stat. 144). The action was commenced by filing the complaint on May 23, 1867, and on the same day an order for the arrest of the defendant was allowed. On May 27, the defendant was arrested and gave bail in the sum of $800, and on July 10, his attorney filed a motion to vacate the order. The motion was made and argued as the cause was called for trial, but the trial proceeded and the decision of the motion was reserved for consideration. On the trial the plaintiff had a verdict for $800.

A. C. Gibbs, for plaintiff.
W. W. Page, for defendant.

DEADY, District Judge. The grounds of the motion to vacate the order of arrest in this case are: (1) Because the order was improperly made. (2) Because the affidavit was insufficient. (3) Because there is no undertaking for the writ. The complaint is verified by the oath of the informer, S. P. Reed, and charges that the defendant, on April 22, 1867, did manufacture and sell eight packages of friction matches, without stamping the same, or either of them, as required by the statutes of the United States; and, also, that on May 1, 1867, did in like manner manufacture and sell eight other packages of friction matches. At the time of allowing the order of arrest there was also filed the separate affidavit of the informer, containing substantially the same facts as the complaint, except that the articles therein alleged to have been manufactured and sold, were described simply as matches, without being designated as either lucifer or friction matches. Section 9, of the internal revenue act, of July 13, 1866 (14 Stat. 144), requires that lucifer or friction matches shall be stamped as prescribed in schedule C, and imposes "a penalty of fifty dollars for every omission to affix such stamp."

Counsel for the defendant maintains, that this affidavit is insufficient to authorize the order of arrest, because it does not specifically allege that the matches manufactured and sold by the defendant without stamps, were either lucifer or friction matches. The only kind of matches subject to stamp duty under the internal revenue act, is by that act designated or called "lucifer" or "friction" matches. Whether there are any other kinds of matches known to the arts or commerce, which are not subject to such duty, is a question of fact, of which I cannot take judicial knowledge. Ought I, in the absence of proof pro or con, to presume that there are other kinds of matches, not subject to duty, and that therefore the act stated in the affidavit, may or may not be cause of arrest? I incline to think not. But admitting for the purpose of the argument that the affidavit is insufficient for want of certainty of this particular, it cannot affect this motion. Where the cause of action is sufficiently set forth in the complaint, and the cause of action and arrest are identical, there is no necessity for an additional or separate affidavit to authorize the order for an arrest. In this case, the cause of action and arrest are identical, and the statement of the facts in the complaint is sufficient for either purpose. The order allowing the arrest of the defendant may be made when it appears by affidavit, that a sufficient cause of action and arrest exists. Code Or. p. 165. Upon the same principle, an execution is allowed against the body, without affidavit or other proof than the record, when it appears from the record that the cause of action, on account of which the judgment was given, was also a cause of arrest. Id. p. 210. The statute only requires that the facts necessary to authorize the order of arrest shall appear by affidavit. If the complaint shows a cause of action and no more—as that the defendant is indebted to the plaintiff for money loaned—then it would be necessary to show by affidavit in addition to the complaint, that a cause of arrest exists also—as that the defendant obtained the loan by fraud. The statute should not be so construed as to require the plaintiff to do a useless act to obtain the order. A verified complaint is in this respect an affidavit. It is a statement of facts, verified by the oath of the party making it. If it appears from such a complaint that there exists against the defendant both a cause of action and arrest, enough is shown to justify the order of arrest.

The objection that no undertaking was given for the writ, to indemnify the defendant, will be next considered. The subject of arrest and imprisonment in civil actions in the

courts of the United States, is regulated by the acts of congress, of February 28, 1839, and January 14, 1841 (5 Stat. 321, 410), the latter being declaratory of the former. The first of these acts substantially provides that no person shall be imprisoned for debt on process issuing out of the courts of the United States, in any state where by the laws of such state imprisonment for debt has been abolished, and that where imprisonment for debt was allowed upon conditions and restrictions, it should be allowed in like manner in the United States courts. This act was not prospective, and therefore did not adopt the future legislation of the states. It was also held not to apply to actions in which the United States was plaintiff. On this latter account the act of January 14, 1841, was passed, which declared that the act of February 28, 1839, should be construed to abolish imprisonment for debt in the United States courts, in all cases where, by the laws of the state, imprisonment for debt has been or shall hereafter be abolished. The act is prospective in its terms, so far as future laws of the state abolishing imprisonment for debt are concerned. Whether congress has the power to adopt prospectively state legislation on any given subject, I do not propose to discuss. The power has been seriously questioned, and upon apparently good grounds. In re Freeman [Case No. 5,083]. But the act of 1841, is silent concerning the future laws of the states imposing restrictions and conditions upon the allowance of imprisonment for debt. It does not purport to adopt them. The law of this state regulating arrest in civil actions, requires as a condition precedent to an arrest, that the plaintiff shall give an undertaking to pay the defendant "all costs that may be adjudged to him and all damages which he may sustain by reason of the arrest, if the same be wrongful or without sufficient cause, not exceeding the sum specified in the undertaking." Code Or. pp. 165, 166. This is a condition or restriction imposed upon the allowance of an order of arrest, and is not adopted by the acts of congress. The adoption of this law by a rule of court, might make it of force as a rule of court between private suitors, and even this is questionable. But the United States as plaintiff in an action, could not be bound by such a law unless enacted or adopted by congress. This court could not by rule require the United States to give security for costs, or damages. The United States never pays costs to the adverse party, and it would not be bound by any undertaking entered into on its behalf to pay any one, unless authorized by act of congress.

The objection that the order was improperly allowed, raises the question, whether the United States is entitled to arrest a defendant in an action for a penalty, in this state. The constitution of this state (article 1, § 19) enacts: "There shall be no imprisonment for debt, except in case of fraud or absconding debtors." Code Or. p. 99. The laws of this state provide, among other causes, that the defendant may be arrested on a civil "action for a fine or penalty." Id. p. 164.

Counsel for the defendant maintains that this act of the legislative assembly, is in this particular repugnant to the constitution of the state, and therefore void. No decision of the supreme court is cited in support of this position, and none is known to have been made. The word "debt" is of very general use, and has many shades of meaning. Looking to the origin and progress of the change in public opinion, which finally led to the abolition of imprisonment for debt, it is reasonable to presume, that this provision in the state constitution, was intended to prevent the useless and often cruel imprisonment of persons, who having honestly become indebted to another, are unable to pay as they undertook and promised. In this view of the matter the clause in question should be construed as if it read: "There shall be no imprisonment for debt arising upon contract express or implied, except," etc. Such is substantially the language employed in the legislative acts of most of the states, abolishing imprisonment for debt; and there can be but little doubt that this was the end which the framers of the constitution had in view, as well as the popular understanding of the clause, when the instrument was adopted at the polls.

General or abstract declarations in bills of rights, are necessarily brief and comprehensive in their terms. When applied to the details of the varied affairs of life, they must be construed with reference to the causes which produced them and the end sought to be obtained. A person who willfully injures another in person, property, or character, is liable therefor in damages. In some sense he may be called the debtor of the party injured, and the sum due for the injury a debt. But he is in fact a wrong doer, a trespasser, and does not come within the reason of the rule which exempts an honest man from imprisonment, because he is pecuniarily unable to pay what he promised to. For instance, a person who wrongfully beats his neighbor, kills his ox, or girdles his fruit trees ought not to be considered in the same category as an unfortunate debtor. He ought to be liable to arrest in action for damages by the party injured. Deny him this remedy, and in the majority of such cases it would amount to a denial of justice, and a deliberate repudiation and disregard of the injunction contained in section 10 of the same article—"every man shall have remedy by due course of law for injury done him in person, property or reputation." It may be admitted that a penalty given by statute is technically a debt. It does not, however, arise upon contract, but by operation of law. It is imposed as a quasi punishment for the violation of law or the neglect or refusal to perform some duty to the public or individuals enjoined by law. Penalties are imposed in furtherance of some public policy, and as a means of securing obe-

dience to law. Persons who incur them are either in morals or law, wrong-doers, and not simply unfortunate debtors unable to perform their pecuniary obligations. I do not think the constitutional provision prohibiting imprisonment for debt was intended to apply to or include such cases. From these premises it follows of course that the act of the assembly allowing the arrest of the defendant in an action for a penalty, is not in conflict with the constitution, and therefore valid and binding. But admitting, for the sake of the argument, that these penalties are a debt within the meaning of the clause prohibiting imprisonment for debt, do they not come within the exception—"except in case of fraud." The internal revenue act required the defendant to affix a certain amount of stamps upon all the matches manufactured by him before selling the same or removing them for consumption or sale. As a means of enforcing or securing the payment of this tax, the act also imposed a penalty of fifty dollars upon the defendant for every omission to affix such stamp. The payment of this tax was a duty imposed upon the defendant by law. When he sold these sixteen packages of matches without affixing the stamps to them, he acted fraudulently. Thereby he cheated and defrauded the United States, the plaintiff in this action. These penalties were incurred by this fraudulent act, and if they can be considered a debt within the meaning of said section 10, it is such a debt as falls exactly within the exception—being to all intents and purposes "a case of fraud," both in morals and law. Of course, in this respect there can be no distinction between cheating or defrauding the government of the United States and an individual.

The order for the arrest was properly allowed, and the motion of defendant must be denied.