Olson, Respondent, vs. Sawyer-Goodman Company, Appellant.

*March 23 — April 9, 1901.*

*Gaming contracts: Immaterial error.*

1. Plaintiff worked in defendant's lumber camp, and played poker with its other employees including R., who was its time-keeper and book-keeper, and who also had charge of a supply department maintained

in its camp. There was no money in the camp, and R. agreed to let the winners have goods out of defendant's store equal to the amount of their winnings, and charge the same to the losers, which was done, the plan of operating being carried on with the knowledge and acquiescence of defendant's foreman. Plaintiff having brought action for wages due, the defendant claimed the right to apply thereon the value of goods charged against him by R. *Held,* that the whole scheme was contrary to the statutes and public policy as well, and that plaintiff was entitled to recover in full the wages due him, less the value of goods that had been delivered under said agreement by his express direction.

2. A mistake of the trial court in the entry of judgment, which is against the respondent, is not prejudicial to the appellant, and affords no ground for reversal.

APPEAL from a judgment of the circuit court for Marinette county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

The plaintiff sues to recover $166 for services performed in one of defendant's lumber camps. The answer admitted the performance of the labor, alleged an accounting which showed the balance due plaintiff to be $84.52, the issuing of a time check in payment of that amount, and the subsequent payment of $3.35. There was a tender of judgment for $81.87. The case was tried in justice's court, and taken to the circuit court on plaintiff's appeal. A jury was waived, and the case was tried by the court. On May 17, 1898, the court filed a written decision in favor of plaintiff. The defendant requested certain findings which were refused. Exception was filed to the court's decision and to the refusal of the court to find as requested. A judgment was directed for plaintiff for the sum of $136.67 and costs, which was duly entered, and from which this appeal is taken by defendant.

For the appellant the cause was submitted on the brief of *Quinlan & Daily.*

*James H. McGillan,* for the respondent.

BARDEEN, J. It is admitted that the plaintiff worked 166 days for the defendant at $1 per day. It is also admitted

by plaintiff that during that time he personally received goods and supplies from the company amounting to $12.53, and that the defendant paid his railroad fare home, and for other expenses amounting to $3.35. The defendant claims to be entitled to an additional credit of $65.40, arising out of the following circumstances: The defendant kept a supply department in its camp, under the charge of one Riley, who was also defendant's timekeeper and bookkeeper. A number of the men amused themselves playing poker. A banker kept account of the game, and at the end of each game he would report who had lost and won, and the amount. There was no money in the camp with which these balances could be liquidated, so it was agreed between the players that the debts should be paid from the camp store; that is, the winner could go to the store and get goods to the amount he had won, and have it charged to the loser. Instead of drawing goods at the end of each game and squaring accounts, the banker, in the presence of each player, would report the debits and credits to Riley, who kept a private memorandum thereof. If at any time a party who had credit on this account wanted anything, Riley would give it to him from the company's goods, and charge it to some person against whom there was a debit; and, if the amount drawn was greater than the debit against any one loser, it would be distributed among several, and would then be entered on the company's books as goods obtained by the several losers. This arrangement was made between the men and Riley before the games commenced in the fall, and was also known to the foreman of the camp. During the winter there was charged against plaintiff on store account $81.38. Of this amount, $12.53 was taken by plaintiff for his personal use, and $7.40 was delivered to winners on the personal order of plaintiff. The remainder was for goods turned over to the various winners pursuant

to the original agreement at various times during the winter, and without any express direction from plaintiff. Riley was one of the gamblers, and, as agent for the defendant, assented to the arrangements before stated. The effect of this agreement was that defendant, by Riley, stood as banker for each man to the amount of wages earned, and agreed to turn the same over, or such portion as was lost, to the winners at the games. This was to be done pursuant to the arrangement made between the men and Riley before the games were commenced. The trial court held that this agreement was illegal and void, as being promotive of gambling, and gave no authority to Riley to deliver goods to winners and charge them to the loser; that, when the men were present and got the goods themselves, they were properly chargeable to them, regardless of what they did with them. Upon this theory the plaintiff was held chargeable with the goods to the amount of $7.40, which were turned over to winners in his presence and under his direction. The decision of the trial court seems to have been founded upon a correct appreciation of our statutes condemning gambling, and all agreements and transactions based thereon or growing out of the same. These statutes are sufficiently referred to and discussed by the present chief justice in the opinion written in *Stoddard v. Burt*, 75 Wis. 107. Note, also, *Schoenberg v. Adler*, 105 Wis. 645. The whole scheme was illegal, void, and contrary to the statutes and to public policy as well. The plan of operations was known to defendant's foreman, and carried on with his knowledge and acquiescence. Except for the agreement as to delivery of goods and the plan of shifting credits, it is not at all likely that the games would have been continued. We are entirely satisfied with the conclusion of the trial court, and must therefore affirm the judgment. The court found that plaintiff's wages amounted to $166, and that his total debits

were $23.33, and directed judgment for $136.67,—a mistake of $6 against plaintiff.   Judgment was entered as directed, and the mistake, not being prejudical to defendant, affords no ground for complaint on its part.

*By the Court.*—The judgment is affirmed.