Argued on petition for bail, filed May 20, petition allowed June 3, 1921, submitted on brief by appellant and argued by respondent January 3, affirmed January 16, 1923.

## MOZOROSKY *v.* HURLBURT.

(198 Pac. 556; 211 Pac. 893.)

**Bail—Sheriff Authorized to Take Bail for Appearance of Prisoners in Mesne Process in Civil Actions.**

1. At common law, and under modern statutes, the sheriff has a right to take bail for the appearance of prisoners arrested in mesne process in civil actions.

**Bail—Judicial Officers With Power to Determine Cases have Power to Take Bail.**

2. Generally, all judicial officers having the power to hear and determine cases have the power to take bail; such power being a necessary incident to the right to determine a cause.

**Bail—Discretionary With Court or Magistrate Empowered to Fix Amount.**

3. The amount of bail is addressed exclusively to the judicial discretion and sense of the court or magistrate empowered to fix the amount.

Bail—Arrested Debtor Entitled to Bail Pending Appeal from Adverse Judgment in Habeas Corpus Proceeding.

4. Debtor against whom judgment had been rendered under Section 8264, Or. L., and who had been arrested in execution of the body under Sections 218, 259, was entitled to bail under Constitution, Article I, Section 14, on appeal from an adverse judgment in *habeas corpus* proceedings, on the ground that his arrest was in violation of Section 19.

Habeas Corpus—Appropriate Remedy in Aid of Bail.

5. A writ of *habeas corpus* is an appropriate and proper remedy in aid of bail.

### ON THE MERITS.

Arrest—Constitutional Law—Liability for Repayment of Winnings and Penalty not "Debt" Within Constitution Relating to Imprisonment for Debt—Defendant may be Arrested in Action to Recover Money Lost at Gaming.

6. The liability to repay money won at gaming together with a penalty is not a "debt" within Constitution, Article I, Section 19, providing "there shall be no imprisonment for debt, * * " and one against whom a judgment has been rendered for such cause under Section 8264, Or. L., for gaming as prohibited by Sections 2105–2110, 8263, Or. L., is subject to arrest and imprisonment under Sections 218 and 259, Or. L., providing the defendant in an action at law may be arrested in action for wrongful taking, detaining or converting of property, for fine or penalty, or when guilty of a fraud in incurring the obligation on which the action is brought.

Gaming—Recovery of Losses Purely Statutory Right.

7. The recovery of losses is a purely statutory right, and, in the absence of statute, the courts will not render their assistance to one whose cause is based on an illegal act.

Gaming—Willingness of Gambler to Play Does not Preclude Recovery of Losses.

8. That defendant seeking recovery of his money and statutory penalty was a willing gambler seeking a profit is no defense.

Torts—Consent Ordinarily Defense Except Where Crime Involved.

9. Consent, while ordinarily a defense to an action based on tort, is never a defense, where the tort involves commission of a crime.

From Multnomah: George W. Stapleton, Judge.

Department 2.

Sol Swire obtained a judgment against plaintiff, Jos. Mozorosky, for the sum of $1,600, under the

---

6. Constitutionality of imprisonment for debt, see notes in 37 Am. St. Rep. 758; 34 L. R. A. 634; L. R. A. 1915B, 645.

Civil liability for tort as debt within constitutional prohibition, see notes in 20 Ann. Cas. 1344; Ann. Cas. 1917D, 841.

provisions of Section 8264, Or. L. The brief states that plaintiff appealed from that judgment to this court. After the rendition of the judgment, Swire procured the arrest of Mozorosky under Sections 218 and 259, Or. L., claiming that in case of a gambling debt recovered under Section 8264, Or. L., execution for the body might be issued and the debtor arrested. Plaintiff was arrested on April 16, 1921, and has since been imprisoned. Various efforts have been made to obtain his release. He became a bankrupt on April 22, 1921. *Habeas corpus* proceedings were instituted in the Circuit Court. From an adverse judgment plaintiff perfected an appeal to this court, which is now pending. Plaintiff petitioned the Circuit Court to be allowed to take the poor debtor's oath, which was refused, whereupon he petitioned the Circuit Court for bail pending the appeal of the *habeas corpus* proceedings. Bail was denied him. Plaintiff prays this court that he may be admitted to bail pending the proceedings in this cause. Service of this application was made upon the defendant on May 10, 1921. No answer or brief has been filed on his behalf.          Petition Allowed.

For appellant there were oral arguments by *Mr. Thomas Mannix* and *Mr. Dan E. Powers.*

For respondent there were oral arguments by *Mr. Henry E. McGinn* and *Mr. Edward J. Brazell.*

BEAN, J.—We are not concerned in the consideration of this application with the merits of the case. It is contended upon the part of plaintiff that his arrest is covered by none of the provisions of Section 259, Or. L., and that the Constitution of Oregon, Section 19, provides that there should be no impris-

onment for debt, except in case of fraud or absconding debtors. It is asserted by counsel that there is no provision in our Code for admitting the plaintiff to bail upon an appeal in a *habeas corpus* proceeding, and we infer this was the reason he was not allowed bail by the trial court. Article I, Section 14, of our Constitution provides thus:

"Bail. Offenses, except murder and treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable when the proof is evident or the presumption strong."

It is said in 3 R. C. L., page 5, Section 2:

"In many particulars the rules relating to criminal and civil bail are the same. In either case the principal is considered as being released from the custody of the law and placed in the custody of keepers of his own selection. But a distinction exists in a number of instances due to the different purpose inherent in the two modes of procedure. The object of bail in civil cases is either directly or indirectly to secure the payment of a debt or other civil duty; while the object of bail in criminal cases is to secure the appearance of the principal before the court, for the purposes of public justice. Payment by the bail in a civil case discharges the obligation of the principal to his creditor, and is only required to the extent of that obligation, whatever may be the penalty of the bond or recognizance; while payment by the bail in criminal cases, though it discharges the bail, does not discharge the obligation of the principal to appear in court; that obligation still remains. While the subjects of civil and criminal bail are not here treated separately, the distinction between the rules governing the two species of bail, where material, is pointed out."

1, 2. At common law and under modern statutes, the sheriff has the right to take bail for the appearance of prisoners arrested in mesne process in civil

actions.    It is stated as a general rule that all judicial officers having the power to hear and determine cases have the power to take bail.    it is undoubtedly a necessary incident to the right to hear and determine a cause: 3 R. C. L., p. 21, § 22; *Vanderfort* v. *Brand,* 126 Ga. 67 (54 S. E. 822, 9 Ann. Cas. 617 and note); *Ex parte Alexander,* 59 Mo. 598 (21 Am. Rep. 393).

3. The power to fix bail has always been regarded as a judicial one, and in its nature essentially belonging to courts.   The principle of fixing the amount of bail addresses itself exclusively to the judicial discretion and sense of the court, or magistrate empowered to fix the amount.

The matter of bail on appeal in *habeas corpus* proceedings is not specifically provided for in our statute.    To include in our Code all such particulars would make the volumes too cumbersome.    Our Constitution and statute are plain in regard to bail in criminal cases, and it would seem that the lawmakers deemed such provisions a sufficient declaration of the principle, that one should not be deprived of freedom, except in the case of the grave crimes mentioned, until final adjudication authorizing and compelling such penalty.    It would seem that the greater would include the less in this particular.    It is an inherent right in every person that they shall not be restrained of their liberty except by due course of law.    To deny bail to the plaintiff might in the end practically deprive him of the privilege of an appeal in the *habeas corpus* proceeding.    This right of appeal is not questioned.

The matter of bail on appeal in *habeas corpus* proceedings, arising out of imprisonment on civil process was in question in the case of *Syverson* v. *Foster,*

84 Wash. 58 (146 Pac. 169, L. R. A. 1915E, 340).    The court there declared thus:

"One appealing from an order refusing to vacate a body execution upon the ground that it violates the constitutional provision against imprisonment for debt is entitled to be admitted to bail pending the appeal (on *habeas corpus*)."

4. In a note to the latter case in L. R. A. 1915E, 340, it is stated to the purport that a man's right to his liberty, pending an appeal from a judgment upon which a body execution has been issued, should be at least as sacred as his right to his liberty pending an appeal from a conviction on a criminal charge seems axiomatic. "Bail in civil cases before trial of the cause was known to the common-law (2 Pollock & M. History of English Law, p. 592), likewise the writ of *habeas corpus* (p. 593)." The general rule is, that it is within the sound discretion of the court to refuse or to admit the defendant to bail after conviction and pending appeal, unless the discretion is taken from the court by statute.    See note to *Re Schrieber*, 37 L. R. A. (N. S.) 693.

In *Wright* v. *Hinkle*, 190 U. S. 40 (47 L. Ed. 948, at page 956, 23 Sup. Ct. Rep. 787), the Supreme Court of the United States recognized the existence of the inherent power in courts to admit to bail in civil cases, pending upon appeal.    It is there said at page 63:

"We are unwilling to hold that the Circuit Courts possess no power in respect to admitting to bail other than as specifically vested by statute, or that, while bail should not ordinarily be granted in cases of foreign extradition, those courts may not in any case, and whatever the special circumstances, extend that relief."

5. In passing upon this question, we again assert that we do not take into consideration, or desire to have any expression herein influence, the merits of this case. The writ of *habeas corpus* is an appropriate and proper remedy in aid of bail.

In view of the condition of the docket in this court, we consider it essential to a fair administration of justice, and in conformity to the spirit if not the letter of our Constitution and laws, that the plaintiff should be admitted to bail until the question of whether or not he can be legally incarcerated for the debt upon which the judgment was obtained by Swire is finally determined.

The cases cited and those which we have been able to find, although they are not numerous, indicate that in a civil proceeding an appellate court is not narrowly restricted by forms or procedure. In *Ledford* v. *Emerson,* 143 N. C. 527 (55 S. E. 969, 10 L. R. A. (N. S.) 362), the syllabus reads:

"An appellate court may treat a *habeas corpus* proceeding to secure the release of one in custody under a body execution as a motion to recall the execution and discharge the defendant, a decision upon which would be appealable."

See also *United States* v. *Griswold,* 11 Fed. 307, 310, and *Taylor* v. *Fleckenstein,* 30 Fed. 99. We notice the mode of procedure in criminal cases prescribed in Section 1640, Or. L., as something of a guide. This section reads thus:

"After an indictment found, and upon an appeal, a defendant cannot be admitted to bail except by the court or judge thereof where the action is pending, or in which the judgment appealed from is given."

Plaintiff should be allowed to give bail in the sum of $2,000, and to go at large upon executing a writ-

ten bond under seal in favor of the defendant sheriff with good and sufficient sureties, qualified as for bail upon arrest, to be approved by the Circuit Court or judge thereof and filed in that court, conditioned that if his imprisonment on execution be adjudged to be lawful upon the appeal, he will surrender himself to the custody of the sheriff of Multnomah County for continuance of such imprisonment, or pay the judgment upon which the execution was issued in the case of *Sol Swire* v. *Jas. Mozorosky*, but not exceeding the sum of $2,000.

It is so ordered.      PETITION ALLOWED.

## ON THE MERITS.

This application involves the denial of the petition of one Jos. Mozorosky for a writ of *habeas corpus*. From a copy of the complaint attached to and made a part of the petition herein, it appears that the petitioner was a defendant in an action prosecuted by one Sol Swire as plaintiff, for the purpose of recovering the sum of $1,600, double the amount of Swire's losses at a gambling table conducted by Jos. Mozorosky. The complaint shows that Jos. Mozorosky, petitioner herein and the defendant in the above mentioned action, "operated and conducted, as proprietor, a gambling place at First & Sheridan Streets, in the City of Portland, Oregon, where games of cards were played for money, on all of which said games defendant collected a percentage from the winner." Between July 15 and August 15, 1919, Swire lost $150 at poker, at Mozorosky's gambling table, and between December 1, 1919, and March 31, 1920, he lost, at poker, the sum of $650 at the same table, making a total of $800 of Swire's money that was passed over the gambling tables

conducted by Mozorosky. It further appears from the pleading that Mozorosky kept the money. The plaintiff Swire based his action on Section 8264, Or. L. Upon a trial by jury, a verdict was returned in accordance with the allegations of the complaint.

The petitioner was arrested on April 16, 1921, by virtue of the provisions of Sections 218 and 259, Or. L. This proceeding was instituted in the Circuit Court to obtain his release. From an order sustaining a demurrer to plaintiff's petition, an appeal was taken to this court. Bail having been denied by the Circuit Court pending the appeal, the matter came here for decision and this court held, in *Mozorosky* v. *Hurlburt,* decided June 3, 1921, 198 Pac. 556, that the petitioner was entitled to be admitted to bail pending his appeal; and his bail was fixed at $2,000, "conditioned that if his imprisonment on execution be adjudged to be lawful upon the appeal, he will surrender himself to the custody of the sheriff of Multnomah County for continuance of such imprisonment or pay the judgment upon which the execution was issued * * ."

The assignment of error relates to the validity of the arrest.          Affirmed.

For appellant there was a brief over the names of *Mr. Thomas Mannix* and *Mr. Dan E. Powers.*

For respondent there was a brief and oral arguments by *Mr. Henry E. McGinn* and *Mr. Edward J. Brazell.*

BROWN, J.—6. The ground urged for the granting of the writ of *habeas corpus* was that the petitioner is being imprisoned for debt in violation of

Article 1, Section 19, of the Constitution of Oregon, which provides:

"There shall be no imprisonment for debt except in case of fraud or absconding debtors."

As noted above, the judgment was recovered under our statute defining and prohibiting unlawful gaming. The provisions of the Code asserted to justify the arrest of the petitioner read, in part, as follows:

"No person shall be arrested in an action at law, except as provided in this section. The defendant may be arrested in the following cases:

"1. In an action * * for * * wrongfully taking, detaining or converting property;

"2. In an action for a fine or penalty * * ;

"4. When the defendant has been guilty of a fraud in contracting the debt or incurring the obligation for which the action is brought * * ." Sec. 259, Or. L.

Is the petitioner within the protection of the constitutional prohibition invoked in his behalf?

The term "debtor" has various shades of meaning.

"It is well settled that prohibitions of imprisonment for debt apply only to actions arising out of contracts, express or implied, and do not extend to actions *ex delicto.*" 23 C. J., Executions, § 1109.

"Fines, forfeitures, or penalties imposed by law are not debts, and hence actions for the recovery or collection thereof are not within the purview of constitutional or statutory prohibitions against imprisonment for debt * * ." 23 C. J. Executions, § 1108.

It is said by the editors of R. C. L., under the title "Executions":

"As most of the constitutional provisions against imprisonment for debt relate only to debts arising out of contracts, in many states the right to imprison

in actions for tort, particularly when fraud is involved, as well as in proceedings of a criminal or *quasi*-criminal character, still exists. The authorities almost unanimously hold that the debt intended to be covered by the constitutional provisions must be a debt arising exclusively from actions *ex contractu*, and was never meant to include damages arising in actions *ex delicto*, or fines, penalties, and other impositions imposed by the courts in criminal proceedings as punishments for crimes committed against the common or statute law." 10 R. C. L. 175. See note, 34 L. R. A. 634 et seq.

"The term [debt] neither includes torts nor judgments for torts: *Savage* v. *Shaw*, 195 Mass. 571 (81 N. E. 303, 122 Am. St. Rep. 272, 12 Ann. Cas. 806); citing *Child* v. *Boston & Fairhaven Iron Works*, 137 Mass. 516 (50 Am. Rep. 328); *Heacock* v. *Sherman*, 14 Wend. (N. Y.) 58; *Chase* v. *Curtis*, 113 U. S. 452 (28 L. Ed. 1038, 5 Sup Ct. Rep. 554, see, also, Rose's U. S. Notes); *Leighton* v. *Campbell*, 17 R. I. 51 (20 Atl. 14, 9 L. R. A. 187); *Bohn* v. *Brown*, 33 Mich. 257; *Cable* v. *McCune*, 26 Mo. 371 (72 Am. Dec. 214); *Cable* v. *Gaty*, 34 Mo. 573 (86 Am. Dec. 126); *Doolittle* v. *Marsh*, 11 Neb. 243, 9 N. W. 54)." 1 Words & Phrases (Second Series), 1231.

In a note to *Ex parte Berry*, 20 Ann. Cas. 1344, it is said by the annotator:

"The constitutions or statutes of many states declare that no person shall be imprisoned for debt, exceptions to this broad prohibition appearing in some instances. The purpose of such a provision is to abolish imprisonment for debt as it was practiced at common law. Accordingly, where a debt is the basis of a civil action there can be lawfully no imprisonment of the debtor.

"But where a person incurs civil liability by a wrongful act, the constitutional or statutory provision has no application and he lawfully may be imprisoned because of such act."

Among the numerous citations contained in the note is *United States* v. *Walsh*, 1 Abb. 66, Deady 281 (28 Fed. Cas. No. 16,635, p. 391). Judge DEADY was president of the Constitutional Convention of this state, and his interpretation of Article I, Section 19, reading: "There shall be no imprisonment for debt, except in case of fraud or absconding debtors," is illuminating.

The case of *United States* v. *Walsh* is a leading one, and has often been cited by text-writers and courts. Judge DEADY wrote:

"Counsel for the defendant maintains that this act of the legislative assembly is in this particular repugnant to the constitution of the state, and therefore void. * * The word 'debt' is of very general use, and has many shades of meaning. Looking to the origin and progress of the change in public opinion, which finally led to the abolition of imprisonment for debt, it is reasonable to presume that this provision in the state constitution was intended to prevent the useless and often cruel imprisonment of persons who, having honestly become indebted to another, are unable to pay as they undertook and promised. In this view of the matter the clause in question should be construed as if it read: 'There shall be no imprisonment for debt arising upon contract express or implied, except,' etc. Such is substantially the language employed in the legislative acts of most of the states, abolishing imprisonment for debt; and there can be but little doubt that this was the end which the framers of the constitution had in view, as well as the popular understanding of the clause, when the instrument was adopted at the polls.

"General or abstract declaration in bills of right are necessarily brief and comprehensive in their terms. When applied to the details of the varied affairs of life, they must be construed with reference to the cause, which produced them and the end sought to be obtained. A person who willfully in-

jures another in person, property, or character, is liable therefor in damages. In some sense he may be the debtor of the party injured, and the sum due for the injury a debt. But he is, in fact, a wrong-doer, a trespasser, and does not come within the reason of the rule which exempts an honest man from imprisonment, because he is pecuniarily unable to pay what he promised to. For instance, a person who wrongfully beats his neighbor, kills his ox, or girdles his fruit trees ought not to be considered in the same category as an unfortunate debtor. He ought to be liable to arrest in action for damages by the party injured. Deny him this remedy, and in the majority of such cases it would amount to a denial of justice, and a deliberate repudiation and disregard of the injunction contained in Section 10 of the same article— 'Every man shall have remedy by due course of law for injury done him in person, property or reputation.' It may be admitted that a penalty given by statute is technically a debt. It does not, however, arise upon contract, but by operation of law. It is imposed as a *quasi* punishment for the violation of law or the neglect or refusal to perform some duty to the public or individuals enjoined by law. Penalties are imposed in furtherance of some public policy, and as the means of securing obedience to law. Persons who incur them are either in morals or law wrong-doers, and not simply unfortunate debtors unable to perform their pecuniary obligations. I do not think the constitutional provision prohibiting imprisonment for debt was intended to apply to or include such cases."

Jos. Mozorosky is not a debtor within the meaning of Article I, Section 19. He is both a tort-feasor and a criminal. The money he raked in from the poker-table never became his own. He acquired no title to Swire's money, won at unlawful gaming.

The legislative assembly of 1876, recognizing that gambling is pernicious to the general welfare, in

order to suppress and, if possible, eradicate that great evil, enacted a statute with teeth and, when enforced, very effective. The measure is entitled, "An Act to prevent and punish gambling." Laws of Oregon, 1876, p. 39. The act contains an intermingling of criminal and civil provisions. It penalizes unlawful gaming.

Section 1 thereof denounces as a criminal "every person who shall deal, play, or carry on * * any game of * * poker, * * whether the same be played for money, checks, credits, or any other representative of value," and provides a penalty: Sec. 2105, Or. L.

Section 2 declares that notes, bills, bonds, mortgages or other securities and other conveyances shall be void when won by playing at the games denounced by Section 1 thereof: Sec. 8263, Or. L.

Section 3 enacts that

"All persons losing money or anything of value at or on any of said games shall have a cause of action to recover from the dealer or player winning the same, or proprietor for whose benefit such game was played or dealt, or such money or thing of value won, twice the amount of the money or double the value of the thing so lost." Sec. 8264, Or. L.

Section 4 provides for the forfeiture of rental by a landlord for a period of six months: Sec. 8265, Or. L.

Section 5 prescribes that the lessee may forfeit his lease by permitting gambling: Sec. 8266, Or. L.

Section 6 enacts a penalty for permitting gambling by the owner of the place: Sec. 2106, Or. L.

Section 7 makes it the special duty of each district attorney, sheriff, constable, city or town marshal or police officer to prosecute gambling diligently: Sec. 2107, Or. L.

Section 8 prescribes a severe penalty for refusal or neglect of officers to prosecute gambling: Sec. 2108, Or. L.

Section 9 relates to competency of witnesses: Sec. 2109, Or. L.

Section 10 fixes a penalty for a witness who neglects to appear: Sec. 2110, Or. L.

The case of *Stoddard* v. *Burt,* 75 Wis. 107 (43 N. W. 737), is directly in point. Under a gambling statute permitting the losing gambler to recover from the winner, the court said:

"The only question presented upon this appeal is whether the defendants were liable to arrest for taking, detaining, and converting to their own use money and property won by them, and lost by the plaintiff while gambling with each other. * *

"The manifest purpose of these statutory provisions is to make any and all gambling unlawful and punishable; to nullify and avoid any and all contracts, transfers, and transactions based thereon, or growing out of the same; and to prevent 'any person from acquiring any legal right or title to any property of another by gambling. * * Such right of the loser to recover such specific property is based on the theory that such property has been unlawfully taken, and is unlawfully detained by such stakeholder or winner, and hence the action to recover the same is necessarily in tort. The mere fact that the winner has succeeded in converting to his own use the property thus unlawfully taken does not prevent the action by the loser to recover the value thereof from the winner being in tort. * * We must hold that the cause of action stated in the affidavit for arrest is in tort. The question remains whether our statute authorizes the arrest for such cause of action. The statute expressly prohibits an arrest 'in a civil action, except as prescribed by' Chapter 122, Section 2688, Revised Statutes, but that statute expressly provides, in effect, that 'the defendant may

be arrested * * in an action * * for wrongfully taking, detaining, or converting property.' Subd. 1, Sec. 2689, Id. The law as stated above and as applied to the cause of action alleged in this case makes it very apparent that the defendants unlawfully took and received the property of the plaintiff described, and thereupon unlawfully converted the same to their own use."

This case is cited with approval in *Olson* v. *Sawyer-Goodman Co.,* 110 Wis. 149 (85 N. W. 640, 53 L. R. A. 648).

7. Time was when a civil action for the recovery of money lost at a gambling table could not have been maintained, for the right to recover money lost at unlawful gaming is purely statutory: *Meech* v. *Stoner,* 19 N. Y. 26. In the absence of such a statute, courts will not lend their assistance to one in Swire's situation, because his cause of action is founded upon an illegal act: *Higgins* v. *McCrea,* 116 U. S. 671, 686 (29 L. Ed. 764, 6 Sup. Ct. Rep. 557, see, also, Rose's U. S. Notes); *White* v. *Barber,* 123 U. S. 392, 425 (31 L. Ed. 243, 8 Sup. Ct. Rep. 221); *F. M. Davies & Co.* v. *Porter,* 248 Fed. 397 (160 C. C. A. 407).

8. It is urged in behalf of the appellant that Swire was a willing gambler. We concede that. It is asserted that no one induced him to come into the game. That is possible. Further, that he walked in of his own free will. We grant that. Likewise, that he was looking for profit. Even so. Again, that if he won he could take the other man's money and pay nothing. That is altogether probable. Lastly, if he lost he would become an informer and seek to recover damages under a gambling statute; that he was bound to win in any case. This may all be true. Yet the law, in its anxiety for the

common welfare, invites every man who loses money at a gambling game to repent, and offers him a remedy to recover that which he has lost; and for the purpose of discouraging gambling, it not only provides a penalty for violating the criminal provision of the gambling act, but, for the further purpose of penalizing and discouraging gambling, permits the loser to recover double that which he has lost. He recovers the equivalent of what he has lost, as compensation. The amount in excess thereof may be deemed a penalty.

The case of *M. O'Keefe* v. *Emil Weber et al.,* 14 Or. 55 (12 Pac. 74), was an action involving the question as to whether or not the act is broad enough to comprehend the provisions of the Section of the statute under which this action has been prosecuted, as well as the question whether or not a statute can contain both criminal and civil provisions.

In the later case of *Meyers* v. *Dillon,* 39 Or. 581 (65 Pac. 867, 66 Pac. 814), Mr. Chief Justice Bean, in referring to the Section of the Code under which this action was instituted, said:

"It particularly refers to the unlawful gaming defined and punished by other sections and is, in effect, one of the penalties for the violation of the act."

The statute, in so far as it permits the gambler to recover what he has lost, is purely remedial. But when it makes the gambler who won repay to the losing gambler in twofold for every dollar lost, such a statute, as stated by Mr. Chief Justice Bean, is penal in character: *Jacob Zeller* v. *White,* 106 Ill. App. 183; *Pearce* v. *Foote,* 113 Ill. 228 (55 Am. Rep. 414).

9. Consent is ordinarily a defense to an action based upon a tort. But consent is never a defense to a tort that involves commission of a crime: 38 Cyc. 531.

The petitioner complains that the record fails to show conversion, etc. The pleading alleges facts from which the legal conclusion follows that Mozorosky was guilty of unlawfully taking, detaining and converting the property of Swire.

This case is affirmed.                         AFFIRMED.

McBRIDE, C. J., and BEAN and RAND, JJ., concur.