# Johnson *v.* The State.

## *Violating Prohibition Law.*

(Decided April 20, 1911.   55 South. 226.)

1. *Judgment; Sufficiency; Guilt.*—Where a judgment entry recited that on a verdict finding the defendant guilty and assessing a fine of fifty dollars the court ordered and adjudged that the State for the use of G County have and recover of the defendant the sum of fifty dollars, the fine so assessed by the jury, together with all the costs for which execution may issue, while irregular for a failure to formally adjudge the defendant guilty of the offense for which he was charged, was nevertheless not fatally defective since by necessary implication it was rested upon a concurrent finding of guilt.

2. *Appeal and Error; Payment of Fine; Effect.*—Where an accused is convicted of selling liquor contrary to law and fined fifty dollars and costs from which judgment he appeals, the fact that he had paid the fine and costs did not constitute a waiver of his appeal (sections 6244 and 6250 Code 1907.

3. *Intoxicating Liquors; Wrongful Sale; Barter.*—Construing together the provision of Acts 1907 (ss) page 71, and section 7363 Code 1907, it is held that under an indictment charging a sale of liquor contrary to law a conviction may be had on proof of a barter or exchange of liquor for other property.

4. *Same; Aiding and Abetting.*—Under the provisions of Acts 1907, page 71 and section 7363 Code 1907, one who procures prohibited liquor for another, who receives the same, necessarily also aids and abets the sale or unlawful disposition thereof by the dispenser, and one so doing is guilty of aiding and abetting, although the purchaser or receiver may not be punishable therefor.

5. *Same; Evidence.*—Where in procuring the liquor for R the defendant was acting in some capacity other than that of mere assistant, friend, or agent, of R, and was guilty of either selling the

[Johnson v. The State.]

liquor himself, or aiding or procuring its barter by the person from whom he procured it regardless of the circumstances surrounding its final delivery to R. evidence that at the time the offense was committed the defendant was working for R under a criminal contract was not admissible, in the absence of any claim of duress.

APPEAL from Geneva County Court.

Heard before Hon. E. FOSTER ELLSBERRY.

Noah Johnson was convicted of selling spirituous, vinous or malt liquors contrary to law, and he appeals. Affirmed.

W. O. MULKEY, for appellant. The facts here shown do not constitute a sale.—*Coker v. State*, 91 Ala. 92. The court should have admitted the fact that the defendant was working for the purchaser of the whiskey under a criminal contract.

ROBERT C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

SOMERVILLE, J.—The defendant was indicted and convicted for selling spirituous, vinous, or malt liquors contrary to law.

The record shows a minute entry, reciting that upon the verdict of the jury finding the defendant guilty, and assessing a fine of $50, the court "ordered and adjudged that the state of Alabama, for the use of Geneva county, have and recover of the defendant the sum of fifty dollars, the fine assessed by the jury, together with all the costs in this behalf expended, for which execution may issue." .Immediately following this is the recital "Comes the defendant in open court and pays the fine and costs to the clerk, and is discharged."

1. This court has often criticised judgments of conviction in criminal cases for omitting to formally adjudicate the fact of the defendant's guilt. Nevertheless the omission has been sanctioned, where the judgment

[Johnson v. The State.]

entry contains a sentence to hard labor, or confinement in the penitentiary, as resting by necessary implication upon a concurrent adjudication of guilt.—*Driggers v. State,* 123 Ala. 46, 26 South. 512; *Wilkinson v. State,* 106 Ala. 23, 17 South. 458. The judgment entry in the present case, while in form only for the recovery of the amount of the fine and costs assessed, is in effect a sentence upon the defendant to pay that amount. And, within the principle of the above cases, we think the entry shows a valid judgment.

2. Upon the theory that defendant's payment of the fine and costs adjudged against him, followed by an order of discharge from custody, was a waiver of the right of appeal, or a release of errors, there is a motion to dismiss the appeal. The precise question thus presented has not, it seems, been heretofore considered by this court, though authorities from elsewhere are not wanting.

In 12 Cyc. pp. 807, 808, the general rule, as deduced by the editor from the cases cited, is thus stated: "As the appellate court will not determine a purely speculative question, it will not consider an appeal from a sentence which has been acquiesced in. Hence the accused, by voluntarily paying the fine imposed on him, waives his right to appeal, or to have a review by certiorari."

With one exception, the opinions in the cases cited in support of the rule quoted, taken from some half dozen jurisdictions, offer no discussion of the question, and furnish no reason for the conclusion announced, other than that the payment determined the issues, or ended the case.

The exception noted in *State v. Westfall,* 37 Iowa, 575, from which we quote: "Courts, aside from the exceptional case of an appeal taken under the statute by

[Johnson v. The State.]

the state, do not determine mere abstract questions. If
the judgment in this case had been one of imprisonment,
and the defendants had served out the period of impris-
onment, it seems clear that they could not afterward
prosecute an appeal from the judgment, for the reason
that they could derive no benefit from a reversal. By
voluntarily paying a fine imposed upon them, they stand
in the same relation to the law as they would have done
if they had served their period of imprisonment. All
that can be said for them is that they have paid money
in mistake of their legal rights. If the money need not
have been paid, they have clearly made a mistake of
law. If, upon this appeal, the judgment should be re-
versed, they could not recover it, and hence they could
derive no benefit from the appeal."

The case of *State v. Burthe*, 39 La. Ann. 328, 1 South.
652, was based upon a rule of practice which denied the
right of appeal to a party who had *acquiesced* in the
judgment by executing it *voluntarily.* But where the
payment was not *voluntary,* it had no such effect.—
*State v. Brown,* 29 La. Ann. 862.

In *State v. Conkling,* 54 Kan. 108, 37 Pac. 992, 45
Am. St. Rep. 270 (not cited in the Cyc. note), where the
defendant had paid the fine under protest, declaring he
reserved the right of appeal, the appeal was dismissed,
the court saying: "It appears that the sentence of the
law has been executed, and nothing is left for further
controversy. By his own act Conkling satisfied and dis-
charged the judgment entered against him. His protest
and attempt to reserve the right of appeal are unavail-
ing. The statute does not provide for nor contemplate
an appeal from a discharged judgment. Neither pay-
ment nor protest was necessary to protect his rights.
Under the statute the judgment of conviction which
was entered against him would have been stayed by the

mere taking of an appeal, without any order of the court or the giving of a bond."

In this state "any person convicted of a criminal offense * * * may appeal from the judgment of conviction to the Supreme Court."—Code, § 6244. In misdemeanor cases, upon notice to the trial court of intended appeal, although the judgment of conviction must be entered, execution thereof must be suspended pending the appeal.—Code, § 6250. During such time the defendant may give bail and be temporarily discharged, but failing to do this he must be committed to jail.

It thus appears that a defendant who has been convicted of a misdemeanor must, although he appeals, either give the bail prescribed by the statute or satisfy the judgment (if it can be satisfied), or be committed to jail. We find nothing in our statutes regulating appeals which might indicate that, where the punishment imposed is the payment of money, its payment by the defendant, before or pending appeal, is a waiver or relinquishment of that right. We are therefore free to adopt that rule which is most consonant with justice, and most in accord with the general principles of the law.

Although there are a few cases to the contrary, the rule is nearly universal in civil cases that mere payment of a judgment, or obedience to the mandate of the court, works no waiver of the right of appeal, and so this court has held.—*Duncan v. Wares*, 5 Stew. & P. 119, 24 Am. Dec. 772; *Ex parte Walter*, 89 Ala. 237, 7 South. 400, 18 Am. St. Rep. 103; *Nixon v. Bolling*, 145 Ala. 277, 40 South. 210. As lucidly shown in *Mayor, etc., ads. Riker*, 38 N. J. Law, 225, 20 Am. Rep. 386, the rights of a party so paying or performing are quite different from the ordinary case of payment under a mis-

take of law. In a note to *State v. Conkling, supra,* Mr. Freeman has collected a large number of cases, including both civil and criminal, and he there takes occasion to criticise the doctrine of *State v. Westfall,* 37 Iowa, 575, and several other cases in line with it, as being unsound and erroneous in principle.

The crux of the discussion seems to lie in the variant conceptions of what is to be deemed a *voluntary* payment or acquiescence. The approved rule in civil cases is well stated in *Richeson v. Ryan,* 14 Ill. 74, 56 Am. Dec. 493: "If the judgment had been collected by execution, there would not be a doubt of the right of Richeson to prosecute the writ of error. A payment under such circumstances would be compulsory, and would not preclude him from afterwards reversing the judgment, if erroneous, and then maintaining an action to recover back the amount paid. The payment in question must equally be considered as made under legal compulsion. The judgment fixed the liability of Richeson, and he could only avoid payment by procuring its reversal. He was not bound to wait until payment was demanded by the sheriff. He was at liberty to pay off the judgment at once, and thereby prevent the accumulation of costs. By so doing he did not waive his right to remove the record to this court, for the purpose of having the validity of the proceedings tested and determined."

And to the same extent the Iowa court itself has said: "Suppose a judgment is rendered against a party, and he cannot give security to supersede its enforcement while he prosecutes an appeal, and an execution is therefore issued, and his property is about to be sold under it—his homestead, it may be. Now, can it be claimed that, if he shall pay off the judgment, he is thereby deprived of an appeal? Surely this cannot be the law."—*Grim v. Semple,* 39 Iowa, 570-572.

The decisions of this court in cases where a party has paid illegal taxes are not opposed to this view: the theory of those cases being that by *anticipating* the *judgment* of the law upon his liability, and in the absence of demand or threat by the collector, he *waives* any defense he may have, and hence may be said to have paid *voluntarily.—Cahaba v. Burnett,* 34 Ala. 400; *Raisler v. Athens,* 66 Ala. 194, 198; *Mayor, etc., v. Riker,* 38 N. J. Law, 225, 20 Am. Rep. 386.

We can discover no valid reason for a different result in criminal cases. The assumption in *State v. Westfall, supra,* and other cases, that a convicted defendant, who is ordered to be committed to jail, unless the fine and costs be paid or secured, and, under that threat from a *valid judgment,* pays the penalty assessed, does so *voluntarily,* is but a grim form of jesting, and utterly at war with the generally accepted notion of the meaning of that term.

In *State v. Conkling, supra,* the payment was made under protest, with notice of appeal, and the reason for the conclusion seems to be that the payment was none the less voluntary, because unnecessary, since "the judgment of conviction would have been stayed by the mere taking of an appeal." We apprehend that the court was in error in asserting that the *judgment of conviction* would have been stayed, and that appeal under their statute, as under ours, suspends, not the judgment, but only the *execution* of the judgment, and that one important consequence of the judgment, viz., incarceration in jail in default of bail, was not suspended by merely taking an appeal. If we are correct in this, then the reasoning and conclusion of the Kansas court are manifestly wrong.

Nor do we conceive that the supposed inability of the defendant to recover, after reversal of the judgment, the

[Johnson v. The State.]

sum paid by him for its satisfaction, as is predicated in
some of the cases under criticism, is a matter of vital
importance. Whether or not the defendant in this case
might, by order of restitution, or by any other legal
remedy, recover the money he has paid is a question
which is not before us, and which we need not now con-
sider. The right to appeal and reverse an erroneous
judgment in a criminal case cannot, we are satisfied, be
grounded solely on that consideration, and we concur in
the opinion of Cowen, J., in *Barthelemy v. People,* 2
Hill (N. Y.) 248, 255, where he says, in discussing this
very question, in relation to a conviction for criminal
libel: "But the payment or satisfaction of an errone-
ous judgment against a party can never be allowed as a
bar to a writ of error, even in a case where we must see
that no restitution could follow the reversal as a legal
consequence, and no costs be recovered. An erroneous
judgment against him is an injury per se, from which
the law will intend he is or will be damnified by its con-
tinuing against him unreversed. * * * A judg-
ment on the merits is conclusive between the parties,
and, if not by direct, it may be followed by remote, con-
sequences actually injurious." And this view has been
quoted and approved by the Supreme Court of Illinois.
—*Page v. People,* 90 Ill. 418, 425. The motion to dis-
miss the appeal must therefore be overruled.

Under special session act of November 23, 1907 (Acts
Sp. Sess. 1907, p. 71), it is unlawful for any person to
sell, barter, exchange, give away, or otherwise dispose
of, spirituous liquors. And under section 7363, Code
1907, it is made a crime to aid, abet, counsel, or procure
any unlawful sale, purchase, or gift, or other unlawful
disposition, of such liquors, with the further provision
that a conviction for a violation of this section may be
had under an indictment for *selling* such liquors con-

trary to law. By a recent decision of this court, three of the judges dissenting, the latter provision has been literally construed, to the effect that under an indictment charging only *a sale,* a conviction may be had upon proof of *any one* of the several related offenses specified in the statute.—*Darrington v. State,* 162 Ala. 60, 50 South. 396. This ruling has since been followed without dissent (*Rayfield v. State,* 167 Ala. 94, 52 South. 833), and must be regarded as settled law.

Upon the testimony adduced on the trial, the court, being requested in writing, instructed the jury to find the defendant guilty as charged, if they believed the evidence beyond a reasonable doubt.

Only one witness—one Rushing—was examined for the state, and the defendant alone testified for himself. The bill of exceptions sets out all the evidence, from which it appears that the testimony of Rushing, if true, shows a purchase of the whisky by him directly from the defendant for an agreed price; while the defendant's testimony, if true, shows that defendant, at the instigation of said Rushing, procured the whisky from a negro, with the promise to the negro that Rushing would pay him for it by hauling him a load of wood; the whisky thus procured being carried by defendant to his home, and by him afterwards delivered to Rushing. This latter transaction, it is hardly necessary to say, constituted a barter or exchange, as these terms are used in the statute referred to.

So, if the defendant did not sell the whisky to Rushing, he nevertheless, on his own showing, aided, abetted, or procured a barter or exchange of whisky for wood; and a barter or exchange being prohibited, as well as a sale, the transaction obviously falls within the phrase "or other unlawful disposition," as found in section 7363. It follows that on any phase of the evidence

the defendant was guilty of a violation of section 7363, and the instruction to convict was properly given.

4. It is insisted by appellant's counsel that, inasmuch as the purchaser or receiver of liquor unlawfully sold or disposed of is not made punishable for his share in the transaction, the Legislature cannot make punishable the act of a third person in assisting an innocent principal; in other words, that an assistant may not be constitutionally punished for sharing in an act which is innocent as to the actor in chief. In the writer's opinion, the assumption of the principal's immunity is incorrect; but the point is not before us, and cannot be now determined. Suffice it to say that one who procures prohibited liquors for him who receives it necessarily also aids and abets the sale or unlawful disposition thereof by the dispenser. Nor do we know of any constitutional principle inhibitory of the legislative policy of punishing those who assist without condemning also those who are the recipients of that assistance. It is purely a question of policy.

5. While defendant was testifying for himself, he offered to state that, at the time of the offense charged, he was working for the witness Rushing "under a criminal contract," which testimony, on objection by the solicitor, was excluded. Except upon the theory of duress—and that is expressly disclaimed—we can discover no relevancy in the fact of defendant's compulsory servitude under such a contract, since it could in no degree serve to qualify his guilt upon either phase of the testimony. We are not inadvertent to counsel's argument that it may tend to show that, in *delivering* the whisky to Rushing, defendant was acting in some capacity other than that of assisting friend or agent of the purchaser. As we have shown above, he is guilty of either selling it himself, or of aiding or procuring its

28—172

barter, regardless of the circumstances surrounding its final delivery to Rushing.

No error appearing, the judgment must be affirmed. Affirmed.

SIMPSON, ANDERSON, and SAYRE, JJ., concur.