[No. 21101.   Department One.   August 13, 1928.]

THE STATE OF WASHINGTON, *Respondent,* v. LOUIS WINTHROP, *Appellant.*[1]

[1] CONTEMPT (1)—CIVIL OR CRIMINAL CONTEMPT. A proceeding to punish an attorney for absenting himself from the presence of the court, is for a criminal and not a civil contempt, under Rem. Comp. Stat., §§ 1050-1052, 1062.

[2] CONTEMPT (20)—PRESENCE OF COURT—ABSENCE FROM COURT ROOM. An attorney's absenting himself from the court room when his cause was called for trial, is not a contempt committed in "the presence" of the court for which he can be summarily punished without the filing of a complaint and trial.

[3] CONTEMPT (18)—PROCEEDINGS—PRELIMINARY COMPLAINT—RECITATION IN WARRANT. Recitations in a warrant for the arrest of an attorney for a contempt committed out of the presence of the court can not take the place of a preliminary complaint charging him with the offense, and without which the court has no jurisdiction.

[4] CONTEMPT (18).—PROCEEDINGS—COMPLAINT—WAIVER. An attorney, arrested for contempt of court, did not waive the filing of the complaint necessary to give the court jurisdiction, where he moved to quash the warrant and objected to any proceeding without proper charge being made against him.

[5] APPEAL (97)—CONTEMPT (25)—WAIVER OF RIGHT—PAYMENT OF JUDGMENT UNDER PROTEST. The right of appeal from a judgment of contempt is not waived by the payment under protest of a fine to avoid imprisonment, after having given oral notice of appeal and requested the fixing of a supersedeas bond, which was denied.

Appeal from a judgment of the superior court for King county, Findley, J., entered November 15, 1927, upon a summary conviction of criminal contempt, as committed in the presence of the court.   Reversed.

*Louis Winthrop,* for appellant.

*Ewing D. Colvin, R. M. Burgunder,* and *Lynwood W. Fix,* for respondent.

[1]Reported in 269 Pac. 793.

PARKER, J.—This is an appeal by Louis Winthrop, a member of the bar of this state, from a judgment of the superior court for King county adjudging him guilty of contempt of that court, and that he be punished therefor by a fine of $25, and be imprisoned in the county jail until the fine is paid. The judgment is rested upon the theory that the conduct of appellant which the judge of the superior court regarded as constituting contempt was, in legal effect, committed in the presence of the court; and hence that appellant was subject to summary discipline and punishment without charge and trial, as required by law with reference to alleged contempts committed out of the presence of the court. This view of the proceeding entertained by the trial judge is clearly evidenced by appellant's being forced, over his objection, to submit to the jurisdiction of the court and to the judgment of contempt without any charge made against him and by recitals in the judgment.

On October 15, 1927, there was pending and ready for assignment for trial in the superior court for King county the case of Lynch versus Page. Appellant was attorney of record for Lynch in that case. On that day, the case was duly set for trial on November 2, 1927, of which appellant had due notice. He appeared in court with his client and witnesses at the opening of court on that day, but soon thereafter, the case not being immediately called for trial, he absented himself from the court. A short time thereafter, the case was called for trial, and appellant not appearing for some time, the court, during appellant's absence, summarily adjudged him guilty of contempt and fined him therefor $25, causing the clerk to enter an order accordingly. Thereafter, on November 8, 1927, the judge, evidently regarding his order of November 2nd as having been made without jurisdiction, in view of the fact

of its being made and entered during the absence of appellant, vacated that order; ordered "that a bench warrant issue forthwith for said Louis Winthrop;" and set the hearing thereon for November 14, 1927. The clerk accordingly issued a warrant for the arrest of appellant, commanding the sheriff to arrest and bring him before the court, reciting therein,

". . . to answer to the state of Washington, charging the said Louis Winthrop with contempt of court and to then and there show cause why he should not be convicted of a contempt of court."

These recitals in this order and warrant come the nearest of anything in this record to charging appellant with contempt. There was no charge made against appellant by affidavit or otherwise. Thereafter appellant filed his motion to quash the warrant upon the ground

". . . that there has not been served or filed herein any affidavit, or complaint, charging the said Louis Winthrop, with any offense, or stating any facts, constituting any offense, or any contempt of court."

Thereafter the matter came on for hearing, when the court denied appellant's motion to quash the warrant, overruled his objection to the hearing then made upon the same ground as in his motion, and immediately proceeded with the hearing, listening to the testimony of several witnesses touching appellant's absence from court when the case of Lynch versus Page was called for trial.

Upon the conclusion of the hearing, the court, on November 15, 1927, rendered final judgment adjudging appellant guilty of contempt, fining him $25 therefor, and committing him to the county jail until the fine be paid; reciting in the judgment as grounds therefor, in so far as we need here notice the recitals, in substance, as follows: On the opening of court at about the hour

of 9:15 a. m., on November 2, 1927, appellant appeared in court with his client Lynch and witnesses. Soon thereafter, before the case of Lynch versus Page was called for trial, appellant absented himself from the court without securing permission therefor. Soon thereafter, during the absence of appellant, the case was called for trial. Appellant, without excuse, did not return to the court until about 10:15 a. m. In the meantime, the case of Lynch versus Page was stricken from the trial calendar. Upon these facts, and others which we have already noticed, so far as material to our present inquiry, the court concluded that appellant's absence was

". . . contemptuous behavior toward the judge while holding court, in the immediate view and presence of the court, tending to impair its authority and to interrupt the due course of the trial of said case."

Appellant then gave oral notice of appeal to this court. A full statement of facts was prepared and duly certified, the concluding language of which is as follows:

"On November 15, 1927, at 2 o'clock p. m. of said day, the said defendant appeared before the court, and the court did then and there render judgment against said defendant and imposed a fine of twenty-five dollars; said defendant then and there gave notice of appeal in open court, and asked the court to fix the amount of the supersedeas bond, but the court ordered the defendant, Louis Winthrop, committed to the county jail of King county until the defendant paid said fine, and thereupon the defendant paid said fine under protest."

[1] Our contempt statutes to be here noticed, referring to sections of Remington's Compiled Statutes, are the following:

"§ 1050. Every court of justice and every judicial officer has power to punish contempt by fine or imprisonment, or both. . . . ."

"§ 1051. When a contempt is committed in the immediate view and presence of the court or officer, it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate view and presence, determining that the person proceeded against is thereby guilty of contempt, and that he be punished as therein prescribed."

"§ 1052. In cases other than those mentioned in the preceding section, before any proceedings can be taken therein, the facts constituting the contempt must be shown by an affidavit presented to the court or judicial officer, and thereupon such court or officer may either make an order upon the person charged to show cause why he should not be arrested to answer, or issue a warrant of arrest to bring such person to answer in the first instance."

"§ 1062. Either party to a judgment in a proceeding for a contempt may appeal therefrom in like manner and with like effect as from judgment in an action, . . . ."

This, plainly, is not a civil contempt proceeding looking to the coercing of appellant to perform some act in compliance with an order or judgment of the court rendered in a civil action. It is a criminal contempt proceeding looking to the punishment of appellant for conduct on his part which the trial court decided constituted contempt. The judgment is criminal in its nature, as much so in its consequences to appellant as if it had been rendered against him upon conviction of a public offense of equal seriousness. Rem. Comp. Stat., § 1050; 6 R. C. L. 490.

[2] It is contended in behalf of appellant that, whatever his conduct may have been which amounted to contempt in the opinion of the trial judge, occurred away from and out of the view and presence of the court, and that, therefore, the court erroneously proceeded summarily against him to his prejudice. It is plain, we think, by this record that appellant's conduct, viewed by the court as contemptuous, consisted

in his inexcusable absence from the court when the case of Lynch versus Page was called for trial.

We are unable to see how such absence on the part of appellant occurred in the presence or view of the court. The supreme court of Missouri in *In re Clark,* 208 Mo. 121, 106 S. W. 990, 15 L. R. A. (N. S.) 389, had under consideration facts in substance the same as are here involved. Holding that such conduct on the part of the accused was committed out of the presence of the court, and hence not summarily punishable, Justice Lamm, speaking for the court, made these very pertinent observations:

"Recurring now to the question, are the offenses recited in the judgment direct or indirect contempts? The complaint made and recited of the petitioner [Clark] was his intentional absence from the courtroom to the delay and embarrassment of a trial in which the petitioner was engaged as counsel, 15 minutes at one time and 55 at another. The petitioner himself was absent. His acts *ad interim* were likewise absent. His doings went with him. It would seem like an exquisite and palpable contradiction of terms to complain in one breath that the petitioner and his acts were absent, and in the next breath to say that such absence constituted a presence; that is, a contempt committed in the presence of the court. The absence of an attorney, a juryman, a witness, an officer (including even a member of the bench himself), from the courtroom at the precise time due there may be susceptible of many innocent explanations. Each and every of these absences are of a kind and, hence on a level, and none of these explanations are within the mere eyesight or earshot of any court of ordinary mortal endowments. These explanations can only come to the court by evidence aliunde his eye or ear, so that it would seem that absence ought not to be dealt with as essentially in the same class as things that happen in the view or hearing of the court. We think that is the more gracious and the better view, comporting with the good sense of the thing, comes

well within the quoted definition of an indirect contempt, and is sustained by the reasoning of well-considered cases. For example: *Ex parte O'Brien,* 127 Mo. 477, 30 S. W. 158; *In re Dill,* Petitioner, 32 Kans. 668, 5 Pac. 39, 49 Am. Rep. 505; *In re Wood,* 82 Mich. 75, 45 N. W. 1113; *Gordon v. State* (Neb.) 102 N. W. 458; *Indianapolis Water Co. v. Amer. Starboard Co.,* (C. C.) 75 Fed., loc. cit. 975; *Ex parte Robinson,* 86 U. S. 505, 22 L. Ed. 205; *Ex parte Terry,* 128 U. S. 289. We hold, then, that the contempts charged against petitioner Clark are indirect contempts, if any."

It seems clear to us that appellant's conduct, viewed by the court as contemptuous, occurred away from and out of the presence of the court, and therefore that he was not subject to discipline and punishment, other than by a charge being first made against him substantially as prescribed by Rem. Comp. Stat., § 1052, above quoted.

[3, 4] We think it hardly needs argument to demonstrate that appellant was not charged within the letter or spirit of the statute. Plainly, there was no charging affidavit as prescribed by the statute, nor was appellant in any manner informed of what he was to answer other than by the words of the warrant served upon him, above quoted. There is not the slightest suggestion, even in the language of the warrant, as to what alleged contemptuous acts or conduct appellant was called upon to answer; and, plainly, he did not waive the making of a charge against him as required by the statute, as is clearly evidenced by his motion to quash the warrant and his further objection to the court proceeding without proper charge being made against him. *State ex rel. Olson v. Allen,* 14 Wash. 684, 45 Pac. 644; *In re Coulter,* 25 Wash. 526, 65 Pac. 759; *State v. Canutt,* 26 Wash. 68, 66 Pac. 130; *State ex rel. Martin v. Pendergast,* 39 Wash. 132, 81 Pac. 324; *State ex rel. Ewing v. Morris,* 120 Wash. 146, 207

Pac. 18. This last cited decision may seem to suggest that appellant, being an attorney and thus an officer of the court, might be proceeded against as in this case. In that case there was a verified application for an order to show cause, charging Morris, a receiver in an action pending in the court, with failing to comply with a prior order of the court made in that case directed against him, of which order he had notice. This appellant was not charged with any act or conduct; even the warrant went no farther than to advise him that he was to ''show cause why he should not be convicted of a contempt of court.''

[5] It is contended in behalf of the state that this appeal should be dismissed because appellant has paid the fine and thus waived the right to prosecute his appeal. We think it is the law, as announced by the decided weight of authority, that the payment of a civil money judgment by the judgment debtor under coercion in order to save his person or property from execution of the judgment, does not waive his right of appeal from such judgment. The decisions are somewhat inharmonious as to what constitutes such coercion; some holding that there must be an actual threatened execution of the judgment to constitute such coercion, while others hold that the payment of the judgment, even before actual threat of execution thereon, constitutes such coercion. In the text of 2 R. C. L. 65, following reference to holdings of the first above mentioned class, we read:

''As a general rule, however, one against whom a judgment or decree for a sum of money has been rendered does not, by voluntarily paying or satisfying it, waive or lose his right to review it upon a writ of error or appeal unless such payment or satisfaction was by way of compromise or with an agreement not to pursue an appeal or writ of error. This rule has been placed upon the ground that one against whom a

judgment is entered, if he fails to satisfy it, must expect to see his property seized and sold at a. sacrifice, and it is difficult to conceive how his payment of the judgment can give rise to any estoppel against seeking to avoid it for error. The better view accordingly is, that though the execution has not issued the payment of a judgment must be regarded as compulsory, and therefore as not releasing errors, nor depriving the payor of the right to appeal.''

Our own decisions go at least to the extent of holding that coercive payment of a civil money judgment by a judgment debtor does not waive his right of appeal. *Dodds v. Gregson,* 35 Wash. 402, 77 Pac. 791; *Hogue v. McAllister,* 122 Wash. 347, 210 Pac. 671; *Schafer v. Giese,* 135 Wash. 464, 238 Pac. 3.

Notwithstanding these views of the courts touching the question of waiver of right of appeal by payment of a civil money judgment, there seems to be a very decided conflict in the decisions touching the appealable effect of satisfying a criminal or criminal contempt judgment by payment of a fine or suffering imprisonment thereby adjudged against the accused, even when such submission to the judgment is clearly the result of coercion. The reasoning of the courts which hold to the view that such satisfying of a criminal or criminal contempt judgment constitutes a waiver of the right of appeal, seems for the most part to be rested upon the theory that nothing can be restored to the accused if the judgment against him be reversed, and that therefore the question of the correction of the judgment of conviction upon appeal becomes merely moot. Those decisions, it seems to us, lose sight of, or purposely ignore, that damaging effect of such a judgment which everybody knows reaches far beyond its satisfaction by payment of a fine or serving a term of imprisonment. The Alabama court in *Johnson v. State,* 172 Ala. 424, 55 South. 226, learnedly reviewed

the question of waiver of appeal by Johnson by his payment of a fine adjudged against him for selling intoxicating liquor. Justice Somerville, speaking for the court, holding that such satisfaction of the judgment did not constitute a waiver by Johnson of his right of appeal, very pertinently observed:

"Although there are a few cases to the contrary, the rule is nearly universal in civil cases that mere payment of a judgment, or obedience to the mandate of the court, works no waiver of the right of appeal,

. . .

"We can discover no valid reason for a different result in criminal cases. The assumption in *State v. Westfall*, 37 Ia. 575, and other cases, that a convicted defendant, who is ordered to be committed to jail, unless the fine and costs be paid or secured, and, under that threat from a valid judgment, pays the penalty assessed, does so voluntarily, is but a grim form of jesting, and utterly at war with the generally accepted notion of the meaning of that term. . . .

"Nor do we conceive that the supposed inability of the defendant to recover, after reversal of the judgment, the sum paid by him for its satisfaction, as is predicated in some of the cases under criticism, is a matter of vital importance. Whether or not the defendant in this case might, by order of restitution, or by any other legal remedy, recover the money he has paid is a question which is not before us, and which we need not now consider. The right to appeal and reverse an erroneous judgment in a criminal case cannot, we are satisfied, be grounded solely on that consideration, and we concur in the opinion of Cowen, J., in *Barthelemy v. People*, 2 Hill (N. Y.) 248, 255, where he says, in discussing this very question, in relation to a conviction for criminal libel: 'But the payment or satisfaction of an erroneous judgment against a party can never be allowed as a bar to a writ of error, even in a case where we must see that no restitution could follow the reversal as a legal consequence, and no costs be recovered. An erroneous judgment against him is an injury *per se,* from which the law will intend he is

or will be damnified by its continuing against him unreversed. . . . A judgment on the merits is conclusive between the parties, and, if not by direct, it may be followed by remote, consequences actually injurious.' And this view has been quoted and approved by the Supreme Court of Illinois. *Page v. People,* 99 Ill. 418, 425. The motion to dismiss the appeal must therefore be overruled.''

In *Roby v. State,* 96 Wis. 667, 71 N. W. 1046, holding to this same view of the law, Justice Winslow, speaking for the court, said:

''It appears by the record that the plaintiff in error was sentenced to one year's imprisonment in May, 1896, and consequently that his term must now have expired. This fact, however, makes no difference with the disposition of the case. A person convicted of crime may prosecute his writ of error while serving his sentence, and the fact that he may serve out his entire sentence before the decision of his case does not affect his right to a reversal of the judgment if it be erroneous. The mere payment of a judgment in a civil cause does not operate to bar or waive the right to appeal therefrom (*Sloane v. Anderson,* 57 Wis. 123), and for stronger reasons the compulsory working out of a judgment in a criminal case does not debar a man from obtaining a reversal of an erroneous conviction, and thus removing the stigma which wrongly rests on his name and reputation.''

The views expressed in *Commonwealth v. Fleckner,* 167 Mass. 13, 44 N. E. 1053, and *People v. Marks,* 64 Misc. Rep. 679, 120 N. Y. Supp. 1106, lend strong support to this view of the law. The following seem to be the principal cases holding to the contrary view: *State v. Westfall,* 37 Iowa 575; *State v. Conkling,* 54 Kan. 108, 37 Pac. 992, 45 Am. St. 270; *Batesburg v. Mitchell,* 58 S. C. 564, 37 S. E. 36; *State v. Cohen,* 45 Nev. 266, 201 Pac. 1027. We are of the opinion that the sounder and more reasonable rule is that announced in the Alabama and Wisconsin cases, above

quoted from, and we therefore conclude that the appeal should not be dismissed and appellant thereby be deprived of the right to have the judgment against him reviewed by this court.

The judgment is reversed.

FULLERTON, C. J., TOLMAN, FRENCH, and MITCHELL, JJ., concur.