## In the Matter of Z———

### St. Louis Court of Appeals, May 7, 1901.

1. **Disbarment of Attorney at Law:** PROCEEDINGS AND PRACTICE: CAUSES FOR DISBARMENT: STATUTORY CONSTRUCTION. Proceedings instituted in a court of this State to disbar an attorney at law, are dominated by the statutes in so far as the latter relate to the transgressions with which he is charged.

2. ———: ———: ———: INDICTABLE OFFENSE: SUSPENSION. And if he is accused of an indictable offense, and that is the basis on which his removal or suspension from practice is sought, but the charge does not allege a conviction, he can only be suspended from practice for six months.

3. ———: ———: ———: FINDING OF INDICTMENT. And if no indictment is found, or if one is found but not prosecuted to a trial within that time, the suspension must be discontinued unless the delay was produced by the absence or procurement of the accused.

4. ———: RECORD OF CONVICTION: CONCLUSIVE EVIDENCE. The record of conviction or acquittal of any indictable offense in disbarment proceedings, is conclusive as to the facts in all cases, and controls the disposition of the disbarment proceeding (sections 4929, 4930, 4931 and 4932, Revised Statutes 1899).

5. ———: POWER TO SUSPEND OR REMOVE AN ATTORNEY FROM PRACTICE. But the power to suspend or remove an attorney from practice, exists for other causes than indictable offenses, as provided by sections 4934 and 4936, Revised Statutes 1899.

In the Matter of Z.

6. ——: ——: ——: EVIDENCE: MALPRACTICE: DECEIT. And in the case at bar, the evidence establishes that the respondent has been guilty of malpractice and deceit in his professional capacity.

7. ——: ——: ——: DEFINITION. The words "misdemeanor in his professional capacity" are not technically used in section 4924, Revised Statutes 1899, but mean simply professional misbehavior.

## Original Disbarment Proceedings.

RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF SIX MONTHS FROM DATE.

### STATEMENT OF THE CASE.

This is a proceeding which was instituted in this court to have the respondent, Z., who is an attorney at law, removed or suspended from practice. The charges were made and verified by one, Thomas O. Wengler. They are in three counts which need not be recited. The substance of the facts stated is as follows: In January, 1899, one Isaac Johnson, brought an action before a justice of the peace against Maria L. Wengler, to recover damages for the wrongful appropriation and destruction of certain personal property. She employed the respondent Z. to defend her. It is charged that he let judgment go against her by default through gross indifference and carelessness. The judgment was two hundred dollars and thirty-three cents. She took an appeal to the circuit court by the advice of her said attorney. One term of that court was permitted to lapse without notice of appeal being given. The second term began the eighteenth day of September, 1899; still no notice of appeal was given. Thereafter, Mrs. Wengler's appeal was dismissed for that reason. But before that happened it is charged that Z. went to Thomas O. Wengler, the son of Maria L. Wengler and her agent in looking after said liti-

gation, and told him that the judgment could be compromised for eighty-five dollars. This was in August. On September 1 he procured eighty-five dollars from said Thomas Wengler by representing to him that he had in fact consummated said arrangement for a settlement. Wengler gave him a check for eighty-five dollars in order to save further annoyance to his parents, abandoned the case, and it was dismissed as aforesaid for want of notice of appeal. The respondent failed to make a settlement and the information alleges that he never offered the money for that purpose nor made any attempt to carry it through; on the contrary he kept the eighty-five dollars and refused to pay it back.

It was further charged that he borrowed one hundred and seventy-five dollars from three friends, Louis Bompart, O. P. Baldwin and Daniel Dosenbach on the pretense that he intended to pay a judgment which Mrs. Wengler recovered against him for one hundred and fifty-five dollars and fifty-three cents, on account of his neglecting her lawsuit, and that he obtained from one, D. C. Taylor, a sum of money between two hundred and fifty and three hundred dollars on a like pretense, but afterwards kept all said moneys and refused to pay the judgment. There are some other allegations in the information which are not necessary to state. The answer admitted the respondent was a member of the bar and an attorney at law, but denied the charge contained in each of the three counts or that he had been guilty of any malpractice, deceit or misdemeanor in his professional capacity. The cause was referred to T. T. Fauntleroy as a commissioner to take the evidence by the consent of the parties. His full report is before us. Judgment was obtained as stated, by Maria Wengler against the defendant, before a justice of the peace on account of his inattention to her cause, which appears to have been rendered by the consent of Z., or at least on his admission that

her cause of action was just. Thomas O. Wengler also obtained judgment against him for the eighty-five dollars, which he had advanced to settle his mother's controversy with Isaac Johnson and which the respondent had retained. The evidence shows that after the Johnson-Wengler case was appealed to the circuit court a parley took place between Z. and J. J. O'Conner, who was Johnson's attorney, concerning a compromise. Z. bantered him for a settlement telling him he had no case, but Mrs. Wengler would rather pay seventy-five dollars than to be annoyed further. O'Connor declined to recommend a settlement for that sum but said he would submit it to his client and if the latter was willing to accept it would notify Z. not later than the fifth of September. He never notified him. The talk between them was during the latter part of August, and on the first of September, as stated, Z. got the eighty-five dollars from Thomas O. Wengler on the representation that he had agreed or was about to agree with Johnson's counsel on a compromise for that sum. Z. claimed that the reason no notice of the appeal was given was that O'Connor had waived notice, but a motion to reinstate the case on that ground was overruled by the circuit court.

The proof tends to support the allegation that he borrowed money from some friend or friends ostensibly to settle with Mrs. Wengler or the Wenglers. There is considerable correspondence attached to the report as exhibits, which shows that persistent efforts were made by Thomas Wengler and his attorney, R. Lee Mudd, to get the respondent to adjust his differences with the Wenglers. He made several excuses and promises, but never paid anything. He was indulgently treated by Mr. Mudd, who appeared anxious to save him from trouble and disgrace. Finally, this proceeding was begun. Afterwards, there was another effort to adjust matters, participated in by a friend or two of the respondent's, which culminated in

a document signed by Z. but said to have been prepared by Thomas O. Wengler's attorney.  By whomsoever prepared, it was merely the outcome of negotiations looking to a settlement and proved futile because the respondent failed to pay.

The substance of the document is that the respondent, desiring to exculpate himself as far as possible from the charges of professional misconduct, to make amends and restitution for the damages he had caused the Wenglers, to have the disbarment proceeding dismissed, stated that, Thomas Wengler and his attorneys had reasonable and rightful cause for the institution and prosecution of said proceeding, that respondent did in law, but without intention to defraud, cause them the injuries stated in the complaint filed, but in extenuation and excuse therefor says,

"The germ of these issues was his failing to give the statutory notice of appeal in the case of Johnson v. Wengler, which he had reason to believe and did believe, had been waived, and that such failure would not be taken advantage of.  The Thomas O. Wengler money advanced was taken in good faith, and with no intent to defraud him thereof, and was held for the purpose given and ready to be so applied by the time the said case would be called in the circuit court; when, two weeks prior thereto, on the first day of the September term, the affirmance of said judgment for failure of such notice barred its being used, and after the appeal from the affirmance of said judgment had been abandoned, it was at all times ready to be returned to him; but, his immediate and peremptory demand for it, together with the amount of the judgment against Mrs. Wengler, $240, he was unable to meet, hence, the proceedings in the justice court followed.  To which severally he consented to judgment being entered against him.  Upon Mrs. Wengler's demand, being reduced by amount of Thomas O. Wengler's judgment by her consent, as he thinks right and just, this total amount

he was unable to pay, until now, whereupon the proponent resorted to the proceedings now pending and hereby proposed to be disposed of." We would not notice this instrument so particularly but for the fact that it is relied on by the respondent as a complete defense.

*R. Lee Mudd* and *William H. Clopton* for proponent.

(1) Disbarment proceedings are not in the nature of criminal proceedings, unless made so by statute. In re Burr, 1 Wheeler's Cr. Cas. 503; In re Bowman, 7 Mo. App. 567. Such proceedings need require neither the strictness in pleading nor in the production of fact, that criminal prosecutions do. In re Wall, 27 Alb. St. Jr. 91; Randall v. Brigham, 74 U. S. 540; State ex rel. v. Maxwell, 19 Fla. 37; In re Lowenthal, 78 Cal. 427. "Such a proceeding needs neither to be in the name of the State, nor by any public officer." Such a proceeding, say the court, "may be prosecuted by a person on his own responsibility, by leave of court, which was indicated in the award of process." State ex rel. v. Kemp, 82 Mo. 214. And see, in general, In re Buchanan, 28 Mo. App. 230; State ex rel. v. Mullins, 129 Mo. 238; In re Bowman, 7 Mo. App. 567. (2) Naturally, also, courts are not confined to the mere statutory grounds. Weeks on Attys. at Law (2 Ed.), 155; State ex rel. v. Mullins, 129 Mo. App. 236; State ex rel. v. Laughlin, 10 Mo. App. 1. Thus, where no offense, according to the criminal law, is pleaded, or any jurisdiction wherein such proceeding are not criminal proceedings by statute, criminal prosecution can not be a prerequisite to disbarment. In re E., 65 Howe Prac. 171; In re Atty., 86 N. Y. 563; In re Davies, 93 Pa. St. 116, supra. (3) The proceeding then, in each and every one of the three counts in the complaint, arises from the statute for improperly retaining his client's money; or any

"deceit or misdemeanor in his professional capacity;" or professional misdemeanor, so-called.   See Statutes, sec. 4924.  "This term misdemeanor means, in this connection, merely professional misbehavior."   In re Bowman, 7 Mo. App. 567.

    *Chester H. Krum* for respondent.

"The profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise.   The right to exercise it ought not to be lightly or capriciously taken from him.   On the other hand, it is extremely desirable that the respectability of the bar should be maintained and its harmony with the bench be preserved.   For these objects some controlling power, some discretion, ought to reside in the court.   This discretion ought to be exercised with great moderation, but it must be exercised." These observations, made by the immortal Marshall in Burr's case and quoted with approval by this court in State ex rel. v. Gebhardt, 87 Mo. App. 542, apply with peculiar aptness to this proceeding in which the respondent is arraigned.   The statute does not recognize or authorize proceedings of this description as supplementary to judgment or in aid of execution, and, for the first time in its history, this court is asked to resolve itself into a collection agency.   The damages adjudged in behalf of Maria L. Wengler, against the attorney for neglect or oversight, did not result from a misdemeanor in his professional capacity, and the judgment obtained by Thomas O. Wengler did not result from facts showing a misdemeanor of such character.   In the one case there was neither deceit, nor malpractice, nor a misdemeanor in professional capacity as against Maria L. Wengler.   In the other there was no professional relation whatever to Thomas O. Wengler, and the present proceeding must in consequence fail.

In the Matter of Z.

GOODE, J.—Proceedings instituted in a court of this State to disbar an attorney at law, are dominated by the statutes in so far as the latter relate to the transgressions with which he is charged. If he is accused of an indictable offense, and that is the basis on which his removal or suspension from practice is sought, but the charge does not allege a conviction, he can only be suspended from practice for six months; if no indictment is found or if one is found but not prosecuted to a trial within that time, the suspension must be discontinued unless the delay was produced by the absence or procurement of the accused. The record of conviction or acquittal of any indictable offense is conclusive as to the facts in all cases and controls the disposition of the disbarment proceeding. Secs. 4929, 4930, 4931 and 4932, R. S. 1899; State ex rel. v. Gebhardt, 87 Mo. App. 542. Our legislation in reference to disbarment is rather full, indicates a State policy on the subject, and renders precedents from outside jurisdictions to some extent inapplicable.

But the power to suspend or remove from practice exists for other causes than indictable offenses. "Any attorney or counsellor at law who shall be guilty of any felony or infamous crime, or improperly retaining his client's money, or of any malpractice, deceit or misdemeanor in his professional capacity, may be removed or suspended from practice upon charges exhibited and proceedings thereon had as hereinafter provided." Sec. 4924, R. S. 1899, see, also, sec. 4936; State ex rel. v. Gebhardt, supra; In re Bowman, 7 Mo. App. 569; State ex rel. v. Harber, 129 Mo. 271. The complaint in this case does not charge the respondent with having committed a crime, nor are we convinced by the evidence that he did commit one. Without pausing to consider, then, whether the language of the statute requires that a respondent be charged with an indictable offense

Vol 89 app—28

in order to bring him within the provision that he must be indicted and convicted of it before final sentence of suspension or removal can be pronounced against him, or whether it is enough if the facts show he has committed a crime, though not charged with one, we find the evidence establishes that the respondent has been guilty of malpractice and deceit in his professional capacity. We find this in respect to his obtaining the money from Thomas O. Wengler to compromise his mother's lawsuit with Johnson and then keeping it. It may not be perfectly clear that he obtained it with the corrupt purpose of appropriating it to his own use, but it is clear that he did afterwards appropriate it and employ various shifts and subterfuges to retain it and at the same time prevent too hostile measures being taken against him.

The point is made that he was not attorney for Thomas O. Wengler who furnished the money and therefore was not culpable in his professional capacity. That position is untenable. Leaving out of view the fact that Wengler was attending to the litigation as his mother's agent, it is beyond doubt that the respondent's professional character was trusted when Wengler gave him the check. A similar question was raised in re O——, 73 Wis. 602. There the respondent had obtained thirty dollars from a garnishee against whom he was conducting a suit as the attorney for the plaintiff, on the representation that he would pay the money to his client in satisfaction of the claim. Afterwards, the garnishment was dismissed on account of a defect therein, but the attorney refused to return the money to the garnishee and converted the same to his own use. He made various promises to pay it, but never did. The garnishee in a subsequent case was compelled to pay the debt again to the original plaintiff. The opinion says, "The accused received it (the money) from the garnishee by reason of the confidence reposed in him as an attorney in the case. That

confidence was misplaced and by reason of it the garnishee was compelled to pay the money over again. Such professional misconduct is just as reprehensible as though he had used his client's money without consent and then failed to pay it over when demanded." The last remark becomes very pertinent when compared with our statute making the improper retention of a client's money ground for disbarment. Sec. 4924, R. S. 1899. See, also, In re Orwig, 5 Cent. Digest, p. 1471. A New York statute provided for the removal of a solicitor who had been guilty of any deceit, malpractice or misdemeanor; concerning which the Court of Chancery said, "It is not necessary that the deceit should be practiced in a suit which is actually pending in this court; it is sufficient that it is done in his character of solicitor." In re Peterson, 3 Paige's Ch. 511. To the same effect are Slemmer v. Wright, 54 Iowa 164, and State ex rel. v. Burr, 19 Neb. 593. It was as an attorney and counsellor at law who represented professionally his mother, that Thomas O. Wengler reposed confidence in the respondent and placed funds in his hands for a definite purpose; the respondent abused the trust and fell from his high estate by keeping the money. Such misconduct plainly comes within the letter and spirit of the statute last cited. The words "misdemeanor in his professional capacity" are not technically used, but mean simply professional misbehavior. In re Bowman, 7 Mo. App. 567. Respondent may be proceeded against for his misconduct in this court. Sec. 4925, R. S. 1899; In re Whitehead, 28 Ch. Div. 614; People v. Green, 7 Colo. 237; Ex parte Brown, 1 How. (Miss.) 303; In re Bowman, supra.

The document which was prepared with a view to the adjustment of the differences between the respondent and the Wenglers, looking, perhaps, to a dismissal of this prosecution constitutes no defense. It may be, as suggested, that the main purpose of the informant in instituting the proceeding to disbar

was to coerce the respondent into paying him and his mother money. Be that as it may, issues were made up, the case went to trial and evidence was taken and is before the court which convinces us, beyond a reasonable doubt, that the respondent is guilty of misconduct so reprehensible and dishonest that it amounts to a statutory cause for suspending him from the practice of his profession. We can not ignore this proof and dismiss the charges, whatever the motive of the prosecutor may be. Anonymous, 9 L. T. 209. It has often been said that the object of disbarment is not punishment, though the result is of course severely penal. "The courts in such cases exercise their discretion whether a man they have formerly admitted is a proper person to be continued on the roll or not," said Lord MANSFIELD in Ex parte Brounsall, Cowper 829. This language was approved in Ex parte Wall, 107 U. S. 265. It was said in Ex parte Peterson, 3 Paige's Ch., supra: "Solicitors, attorneys, and counsellors are admitted to practice and are entitled to special privileges under the laws of the State, for the purpose of enabling them to be useful to their fellow citizens in the ascertainment, prosecution and defense of their legal and equitable rights. And if such officers abuse the trust which has been thus reposed in them, and conduct themselves in such a manner as to become a nuisance rather than a benefit to the community in which they reside, it is the duty of the courts in which they practice to remove them from their office; as well for the protection of the public as to preserve the character of an honorable and useful profession." The evidence has convinced us that the plaintiff is guilty as charged in the first count of the information, of obtaining eighty-five dollars from Thomas O. Wengler in his professional capacity and afterwards dishonestly appropriating the same to his own use.

It is a painful duty to have to deprive a man of his

means of supporting himself and family for ever so short a time, yet it is not for us to discuss the wisdom of such discipline. The statutes of the State leave no other course open; but we feel impelled to make a judgment of that kind as lenient as we consistently may.

It is, therefore, considered and adjudged that respondent Z. be suspended from the practice of his profession as an attorney at law in the courts of this State for a period of six months from this date and that he pay the costs of this action.