Francis B. Taylor, for appellant.
Maxson & Jones (Walter R. Jones, of counsel), for respondent.

JACKSON, J. I do not think this is a case in which the statute of frauds applies. It is not the case of special promise to pay the debt of another. It is the case of an original promise by the defendant to pay his own debt incurred in purchasing a business. Following the doctrine of Lawrence v. Fox, 20 N. Y. 268, it is immaterial whether the consideration which the defendant promised to pay for the business was to be paid to the person from whom the business was bought by him or to a third person, in this case the plaintiff in this action.

Even if this view of the case were not correct, the statute of frauds would not be available to the defendant, for the reason that he has not pleaded the defense. Crane v. Powell, 139 N. Y. 379, 34 N. E. 911.

Furthermore, I think the written instrument proved was sufficient to take the promise beyond the statute, that a consideration appears expressed in the instrument, and that there was sufficient legal evidence before the justice to warrant him in finding that the sale of the business referred to and the execution of the writing were, if not simultaneous, parts of one transaction.

The judgment should be affirmed.

Judgment affirmed.

---

(64 Misc. Rep. 679.)

PEOPLE v. MARKS.

(Court of General Sessions, New York County. October, 1909.)

1. LICENSES (§ 9*)—ORDINANCES—REPEAL—TICKET SPECULATORS—REGULATION.
   New York City Ordinance, §§ 305, 306, 307, 349, 350, in effect prior to December 22, 1908, regulating ticket speculators, and prohibiting the sale of theater tickets by speculators without a license, were each and all repealed by New York City Ordinance Dec. 15, 1908, in effect from and after January 15, 1909.
   [Ed. Note.—For other cases, see Licenses, Dec. Dig. § 9.*]

2. HAWKERS AND PEDDLERS (§ 4*)—DEFINITION—SALE OF THEATER TICKETS—"HAWKING"—"PEDDLING."
   Since a theater ticket is a mere license, evidence of a right to enter a theater and occupy a definite seat during a performance, and not merchandise, the offering of such ticket for sale does not constitute "hawking" and "peddling," so as to require a license for the sale thereof; such terms referring to the manner in which the business is carried on, and not to the business itself.
   [Ed. Note.—For other cases, see Hawkers and Peddlers, Cent. Dig. § 7; Dec. Dig. § 4.*
   For other definitions, see Words and Phrases, vol. 4, pp. 3220–3223, vol. 6, p. 5260.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CRIMINAL LAW (§ 1026*)—PAYMENT OF FINE—APPEAL.

    The payment of a fine, imposed on a defendant erroneously convicted of offering theater tickets for sale without a license, did not preclude him from appealing therefrom.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2617; Dec. Dig. § 1026.*]

Michael Marks was convicted of offering theater tickets for sale as a speculator without having procured a license, in violation of New York City Ordinances, c. 7, § 306, and he appeals. Reversed, and new trial ordered.

Louis Marshall, for appellant.

Wm. Travers, Jerome, Dist. Atty., and Francis K. Pendleton, Corp. Counsel (Clarence L. Barber and Loyal Leale, of counsel), for respondent.

MULQUEEN, J. This is an appeal, granted by Mr. Justice Rosalsky, from the judgment of Magistrate Kernochan, sitting in the Magistrate's Court, Second District, First Division, on May 21, 1909, imposing upon the defendant a fine of $5 for "offering to sell tickets for admission to the Victoria Theater without having procured a license therefor." The return shows that the defendant was arrested on the complaint of Hugh Jones, a police officer, charging that:

"On the 21st day of May, 1909, at the city of New York, in the county of New York, Michael Marks did unlawfully offer to sell tickets for admission to the Victoria Theater on above date at 8 p. m. without having procured a license therefor, in violation of chapter 7, section 306, of the Ordinances of the Corporation of the City of New York."

The magistrate certified that, after having in due form of law examined the complainant and the witnesses before him produced, and the said Michael Marks, "and it appearing that an offense has been committed, and that there is probable cause to believe the prisoner aforementioned to be guilty thereof, I fix the amount of the fine at the sum of five (5) dollars." The defendant then paid the fine, under protest. The testimony forming part of the return shows that the only pretext for the arrest was the fact that the defendant offered to sell tickets, his license having expired. -

Section 306 of the Code of Ordinances, under which the defendant was arrested, is to be read in conjunction with sections 305, 307, 349, and 350 of the Code of Ordinances of the City of New York, as they existed prior to December 22, 1908. Section 305 read as follows:

"The following businesses must be duly licensed as herein provided, namely, public cartmen, truckmen, hackmen, cabmen, expressmen, drivers, junk dealers, dealers in second hand articles, hawkers, peddlers, vendors, ticket speculators, coal scalpers, common shows, shooting galleries, bowling alleys, billiard tables, dirt carts, exterior hoists and stands within stoop-lines and under the stairs of the elevated stations."

Section 306 read as follows:

"No person shall engage in or carry on any such business without a license therefor under a penalty of not less than two dollars nor more than twenty-five dollars for each offense, and for the purposes of this ordinance the term persons shall include any human being or lawful association of such."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Section 308, so far as material, read as follows:

"The annual license fees shall be as below enumerated:  *  *  *  For each ticket speculator,  *  *  *  $50.00.  *  *  *"

Section 309 read as follows:

"Any license, before its expiration or within thirty days thereafter, may be renewed for another term, upon payment of one-half of the license fee above designated therefor."

Section 349 read as follows:

"Any person selling or offering to sell in any street of the city of New York any ticket of admission to any public place of amusement for any price shall be deemed a ticket speculator, and no ticket speculator shall sell or offer for sale nor shall any ticket of admission be sold on the sidewalk in front of the entrance to any place of amusement."

Section 350 read as follows:

"No ticket speculator shall deceive any purchaser by misstating or misrepresenting what is secured to the purchaser by the ticket sold, under a penalty of not less than two dollars nor more than twenty-five dollars for each offense."

These constitute all of the provisions of the Code of Ordinances of the City of New York which in any way affect ticket speculators.

On December 1, 1908, the board of aldermen adopted the following ordinance, which was approved by the mayor on December 15, 1908.

"An ordinance to repeal parts of title 2 of chapter 7 of part 1 of the Code of Ordinances of the City of New York, relating particularly to ticket speculators.

"Be it ordained by the board of aldermen of the city of New York, as follows:

"Section 1. Section 305 of article 1 of title 2 of chapter 7, part 1 of the Code of Ordinances of the City of New York, adopted October 30, 1906, and approved November 18, 1906, is hereby amended by striking therefrom the words 'ticket speculators' and section 308 of article 2, chapter 7, part 1 of said Code of Ordinances, is hereby amended by striking therefrom the words 'for each ticket speculator, $50;' and sections 349 and 350 of said title 2, chapter 7 of part 1 of said Code of Ordinances are hereby repealed.

"Sec. 2. This ordinance to take effect thirty days after the date of its approval by the mayor."

It is thus evident that every section of the Code of Ordinances which in any way related to ticket speculators was repealed, from and after January 15, 1909; that being 30 days after the date of the approval of the ordinances, just quoted, by the mayor. It requires no further argument, therefore, than a statement of this proposition, to indicate that the defendant has been convicted of an offense which did not exist. There was no requirement that any ticket speculator should have a license. The business, being a lawful business, can now be conducted without the permission of the local authorities; and, the defendant having been arrested merely for plying his lawful vocation, his arrest and conviction are without justification.

The business of ticket speculator is protected by the Constitution as a lawful occupation. People ex rel. Tyroler v. Warden, 157 N. Y. 116, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763. While

it is conceded that the Legislature may regulate the business and require the securing of a license as a condition to its conduct, in the absence of a statute or ordinance providing for such license, it necessarily follows that the business can be freely conducted; and those engaged in it are entitled to be protected rather than to be persecuted.

But it is contended by the learned counsel for the people that "payment of the fine concluded the action, and this appeal is purely academic." If there is any force in this contention, the point should have been raised by counsel on the motion for allowance of appeal. Mr. Justice Rosalsky allowed the appeal, and I am of the opinion that his action renders it necessary for me to consider this case on its merits. But I do not agree with the learned counsel that the question is purely academic. I am of opinion that, if the defendant had been unjustly compelled to pay a fine, his money should be returned to him. Of far more importance, however, is the defendant's right to be relieved of the odium and disgrace of a conviction. To a citizen of good reputation, this is of more serious consequence, and the pecuniary damage he has sustained is of trifling import.

The learned counsel for the people further maintains that the "defendant was properly fined for hawking and peddling merchandise without a license." But the defendant was not charged with such an offense. It is the defendant's right to have the charge against him clearly, definitely, and specifically stated. Under the charge in this case, he could not have been convicted of hawking and peddling merchandise. Furthermore, if such had been the charge, he could not have been convicted under the circumstances disclosed by the testimony. There is a sharp and clear distinction between the business of ticket speculator and the hawking and peddling of merchandise. This difference was recognized in the city ordinances prior to December, 1908. I am of opinion that a theater ticket cannot be regarded as merchandise, in the sense contemplated by the ordinance. A theater ticket is a mere license; it is evidence of a right to enter a theater and occupy a definite seat. It resembles notes and bonds, which are evidences of indebtedness. It has been held that notes and bonds are not embraced within the term merchandise. The terms "hawking" and "peddling" refer to the manner in which the business is carried on, and not to the business itself. The terms have a well-known and precise meaning, and cannot by any reasonable interpretation be applied to the offering of tickets for sale.

For these reasons, I believe that the business of a ticket speculator is lawful and that no license is necessary to carry it on in this city; hence it follows that the defendant was improperly convicted.

The judgment is reversed, and a new trial ordered.

Judgment reversed, and new trial ordered.