[Civ. No. 5416. Second Appellate District, Division Two.—December 24, 1929.]

In the Matter of the Proceedings for the Disbarment of WALTER GOULD LINCOLN, Attorney and Counselor at Law.

Walter Gould Lincoln, *in pro. per.*, for Appellant.

Paul Valee and O. N. Normandin for Respondent Los Angeles Bar Association.

THOMPSON (IRA F.), J.—The appeal herein is from a judgment suspending the accused attorney from membership in the legal fraternity for the period of one year, commencing December 24, 1924. ▮ The first question with which we are confronted is: Have the questions presented by the appeal become moot by the expiration of the period of suspension? (There is no doubt but that the suspension period has expired on account of the self-executing character of the judgment. See *In re Graves*, 62 Cal. App. 168 [216 Pac. 386], and *Lincoln* v. *Superior Court*, 95 Cal. App. 35 [271 Pac. 1107].)

The respondent Bar Association relies upon the authority of *Goldsmith* v. *Board of Education*, 63 Cal. App. 141 [218 Pac. 296], and two cases therein cited to support their assertion that the questions raised by the appeal are now of only academic interest. The cited case was one wherein the plaintiff and appellant, Goldsmith, had been suspended as a school-teacher for unprofessional conduct, after a hearing by the board of education. He instituted a proceeding in *mandamus* by which he sought to be restored to his position. Judgment in the Superior Court went in favor of the board of education, and the petitioner appealed. Before the appeal was determined the period of suspension expired and petitioner was reinstated. The court held, upon the motion for dismissal, that petitioner's right to a salary during the period of suspension was involved, in addition to the question of reinstatement, and, therefore, the appeal should not be dismissed. The reasoning upon the other question of whether the court should entertain an appeal upon the question of reinstatement is obviously *dicta*. Aside from this fact is another element which distinguishes it from the present situation in this, that there the appeal was not from the order finding the petitioner guilty and suspending him, but an appeal in the mandate proceeding which could only result in an order directing the board to reinstate. *Weaver* v. *Reddy*, 135 Cal. 430 [67 Pac. 683], is to be distinguished on the same ground. The third

case, *Bradley* v. *Voorsanger,* 143 Cal. 214 [76 Pac. 1031], is very patently not in point. There the plaintiff brought action to enjoin the holding of an election. The trial court denied the injunction. Before the appeal could be heard the election had been held. Manifestly this case is of no assistance to us because it illustrates a very obvious instance of the question having become moot. No judgment which could have been entered could possibly have afforded the plaintiff-appellant any relief. It cannot be gainsaid that courts should not attempt to determine mere academic questions or render judgments which are ineffective. But is that the instant situation? Assuming that an attorney who has been found guilty of unethical conduct and for that reason suspended is not strictly comparable to a judgment debtor or one convicted of a criminal offense, our attention has not been directed to a case directly in point, nor have we been able to discover any. In civil matters, the law, at least in California, is settled. The party against whom a judgment is rendered does not lose his right of appeal by payment of the judgment unless the payment is made by way of compromise. (*Warner Bros.* v. *Freud,* 131 Cal. 639 [82 Am. St. Rep. 400, 63 Pac. 1017].) Nor can the judgment debtor be deprived of his right of appeal by execution of the judgment and its satisfaction. (*Kenney* v. *Parks,* 120 Cal. 22 [52 Pac. 40].) We think it is apparent that in the instances covered by the authorities cited it could not be seriously argued that the questions had become moot. Yet these adjudications do point to a distinction made in some of the subsequent criminal cases involving fines, wherein it is said that if the payment of the fine be voluntary the right of appeal is lost, whereas if its payment be considered involuntary the right of appeal is not lost. And at this juncture it is well to note that in the present proceeding the satisfaction of the judgment was entirely without the acquiescence of the appellant.

There has been a considerable divergence of opinion in criminal cases. We were at first inclined to set most of them down for the purpose of comparing the logic upon which they are premised. But it seems sufficient, inasmuch as we have concluded that the proper rule is announced in the jurisdictions of Massachusetts, Wisconsin, New York, Washington and Alabama, to call attention to some of the

authorities there. In the well-reasoned case of *State* v. *Winthrop*, 148 Wash. 526 [59 A. L. R. 1265, 269 Pac. 793, 796], the court says: "Notwithstanding these views of the courts touching the question of waiver of right of appeal by payment of a civil money judgment, there seems to be a very decided conflict in the decisions touching the appealable effect of satisfying a criminal or criminal contempt judgment by payment of a fine or suffering imprisonment thereby adjudged against the accused, even when such submission to the judgment is clearly the result of coercion. The reasoning of the courts which hold to the view that such satisfying of a criminal or criminal contempt judgment constitutes a waiver of the right of appeal seems for the most part to be rested upon the theory that nothing can be restored to the accused if the judgment against him be reversed, and that therefore the question of the correction of the judgment of conviction becomes merely moot. Those decisions, it seems to us, lose sight of or purposely ignore that damaging effect of such a judgment which everybody knows reaches far beyond its satisfaction by payment of a fine or serving a term of imprisonment. The Alabama court, in *Johnson* v. *State*, 172 Ala. 424 [Ann. Cas. 1913E, 296, 55 South. 226], learnedly reviewed the question of waiver of appeal by Johnson by his payment of a fine adjudged against him for selling intoxicating liquor. Justice Somerville, speaking for the court, holding that such satisfaction of the judgment did not constitute a waiver by Johnson of his right of appeal, very pertinently observed:

" 'Although there are a few cases to the contrary, the rule is nearly universal in civil cases that mere payment of a judgment, or obedience to the mandate of the court, works no waiver of the right of appeal. . . .

" 'We can discover no valid reason for a different result in criminal cases. The assumption in *State* v. *Westfall*, 37 Iowa, 575, and other cases, that a convicted defendant, who is ordered to be committed to jail, unless the fine and costs be paid or secured, and, under that threat from a valid judgment, pays the penalty assessed, does so voluntarily, is but a grim form of jesting, and utterly at war with the generally accepted notion of the meaning of the term. . . .

" 'Nor do we conceive that the supposed inability of the defendant to recover, after reversal of the judgment, the

sum paid by him for its satisfaction, as is predicated in some of the cases under criticism, is a matter of vital importance. Whether or not the defendant in this case might, by order or restitution, or by any other legal remedy, recover the money he has paid is a question which is not before us, and which we need not now consider. The right to appeal and reverse an erroneous judgment in a criminal case cannot, we are satisfied, be grounded solely on that consideration, and we concur in the opinion of Cowen, J., in *Barthelemy* v. *People* 2 Hill (N. Y.), 248, 255, where he says, in discussing this very question, in relation to a conviction for criminal libel: "But the payment or satisfaction of an erroneous judgment against a party can never be allowed as a bar to a writ of error, even in a case where we must see that no restitution could follow the reversal as a legal consequence, and no costs be recovered. An erroneous judgment against him is an injury *per se,* from which the law will intend he is or will be damnified by its continuing against him unreversed. . . . A judgment on the merits is conclusive between the parties, and, if not by direct, it may be followed by remote, consequences actually injurious." And this view has been quoted and approved by the supreme court of Illinois. *Page* v. *People,* 99 Ill. 418, 425. The motion to dismiss the appeal must therefore be overruled.'

"In *Roby* v. *State,* 96 Wis. 667 [71 N. W. 1046], holding to this same view of the law, Justice Winslow, speaking for the court, said:

" 'It appears by the record that the plaintiff in error was sentenced to one year's imprisonment in May, 1896, and consequently that his term must now have expired. This fact, however, makes no difference with the disposition of the case. A person convicted of crime may prosecute his writ of error while serving his sentence, and the fact that he may serve out his entire sentence before the decision of his case does not affect his right to a reversal of the judgment if it be erroneous. The mere payment of a judgment in a civil cause does not operate to bar or waive the right to appeal therefrom (*Sloane* v. *Anderson,* 57 Wis. 123 [13 N. W. 684, 15 N. W. 21]), and for stronger reasons the compulsory working out of a judgment in a criminal case does not debar a man from obtaining a reversal of an erro-

neous conviction, and thus removing the stigma which wrongly rests on his name and reputation.' "

To the quotation we deem it proper to add the following from *People* v. *Marks*, 64 Misc. Rep. 679 [120 N. Y. Supp. 1106] : "But I do not agree with the learned counsel that the question is purely academic. I am of the opinion that, if the defendant had been unjustly compelled to pay a fine, his money should be returned to him. Of far more importance, however, is the defendant's right to be relieved of the odium and disgrace of a conviction. To a citizen of good reputation, this is of more serious consequence, and the pecuniary damage he has sustained is of trifling import." And also we quote from *Commonwealth* v. *Fleckner*, 167 Mass. 13 [44 N. E. 1053], as follows: "We should be slow to suppose that the legislature meant to take away the right to undo the disgrace and legal discredit of a conviction (Pub. St., c. 169, sec. 19) merely because a wrongly convicted person has paid his fine or served his term. The fact that no indemnity is provided by this act is far from enough to lead us to that conclusion. Of course, the payment of the fine in accordance with the sentence was not a consent to the sentence, but a payment under duress." A notation of the principal authorities to the contrary will be found in *State* v. *Winthrop, supra*. If it be true that one who has been found guilty of a criminal offense and has satisfied the judgment by payment of the fine or suffering a term of imprisonment may yet be entitled to be relieved of the odium and disgrace of the wrongful conviction, it must be equally, if not more, just to remove from the name of a member of the ancient and honorable profession of the law the stain of a judgment which brands him as unfaithful to the trust reposed in him. There is no asset to be possessed by the lawyer so dear or so valuable as his known character, or reputation for honesty, integrity and sincerity of purpose. When it is wrongfully assailed he is damaged not only in the finer sensibilities but also in a financial measure impossible to accurately estimate. We hold to the opinion that the appellant should not be foreclosed of his right to remove this blot upon his record, if in fact he was wrongfully convicted, by the situation forced upon litigants by the congested condition of the calendar,

thus rendering it impossible to determine the appeal until after the period of suspension had expired.

We therefore pass to a consideration of the merits of the appeal. The first point urged by the appellant is that the accusation does not state a ground for disbarment. The accusation in effect charges that the appellant was counsel for Estelle R. Spaulding, for whom he filed an action on September 20, 1922, wherein it was sought to rescind a contract between Estelle R. Spaulding and · C. N. Legge, and to cancel a chattel mortgage given by appellant's client to C. N. Legge; that on October 4, 1922, Estelle Spaulding deposited in court the sum of $75, being the amount of the monthly installment due and payable on that date according to the terms of the mortgage; that thereafter similar deposits were made monthly until a total sum of $1500 had been paid in; that of said amount $1,000 was by stipulation of both parties paid to the owners of the property as rental; that on October 13, 1922, C. N. Legge commenced an action against Spaulding for the foreclosure of the chattel mortgage; that both actions went to trial on May 16, 1923; that two days later the trial judge, Honorable L. H. Valentine, orally announced his decision to the effect that although the defendant in the rescission action had made certain false and fraudulent representations, yet the plaintiff had waived and lost her right of rescission, and that in the foreclosure action the deposits in court of the monthly sums of $75 having been made for the use and benefit of the plaintiff and as payment of all sums falling due according to the terms of the mortgage, the defendant Estelle R. Spaulding was not in default and plaintiff was not entitled to a judgment, but that the sums so on deposit belonged to him. The accusation then sets forth that although the accused · was present when judgment was so announced on May 18, 1923, yet he caused and permitted his client to swear to an affidavit that she had deposited the sum of $500 as a tender in court and that the tender had not been accepted and she desired a return of the tender; that although accused well knew that the tender had in fact been accepted he presented the affidavit to another judge of the Superior Court, the Honorable Sidney N. Reeve, with the statement that no judgment had been rendered in the action and that the tender had been rejected and without disclos-

ing the announcement of Judge Valentine to Judge Reeve, and secured and induced, by his statements and failure to disclose vital facts, Judge Reeve to make an order directing the clerk to turn over to his client the sum then on deposit. The accusation also alleges that Estelle Spaulding did succeed in withdrawing the sum of $481; that accused never advised C. N. Legge or his counsel or Judge Valentine of the withdrawal of said sum, but permitted findings and judgment to be entered in accordance with the oral announcement; that Judge Reeve relied upon the statements of accused and the affidavit when making the order mentioned and would not have made the order had he been advised of the announced decision of the trial judge. Section 287 of the Code of Civil Procedure provides in subdivision 2 thereof that an attorney may be removed or suspended for "any violation of the oath taken by him, or of his duties as such attorney and counselor." Section 282 of the same code, in defining the duties of an attorney, by subdivision 4 makes it mandatory for the lawyer "To employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." In the case of *People* v. *Pearson*, 55 Cal. 472, the Supreme Court made quick disposition of a cause involving somewhat similar action. In that case the attorney advised his client to verify a complaint containing allegations which he knew to be untrue and which he led her to believe had been corrected before she signed it. The court said in its opinion that it was unnecessary "to comment upon the conduct here disclosed." An analysis of the facts in the present case brings us to a similar conclusion. When the appellant advised and permitted his client to sign an affidavit to the effect that the tender had never been accepted, knowing that the oral decision of the trial judge that foreclosure should be denied because the payments had been made in court for the benefit of plaintiff in the second action, he put himself in a position comparable to the attorney in the case cited. When he withheld from Judge Reeve the information that the trial judge had acted upon the theory that the deposits made were for the benefit of the plaintiff in the foreclosure action he was guilty of trickery and misleading a judge by

artifice. It makes no difference whether the judicial officer was misled by a false statement, an unrighteous silence or a combination of both. The fact remains that he was betrayed into taking action he would not have taken had he not relied upon the professional character of the attorney. The accusation in our opinion sets forth a flagrant violation of appellant's duty as an attorney at law and his oath of office as such.

The next assertion of the appellant is that the court had no jurisdiction to try the cause, "since the accused had previously been acquitted before this same court upon a felony charge based upon the same facts." He relies upon *Ex parte Tyler*, 107 Cal. 78 [40 Pac. 33] , *People* v. *Deneen*, 212 Ill. 615 [72 N. E. 789] , *People* v. *Comstock*, 176 Ill. 192 [52 N. E. 67], *In re Z*, 89 Mo. App. 426, *State* v. *Gebhardt*, 87 Mo. App. 542, and *Jones* v. *Sanderson*, 287 Mo. 176 [229 S. W. 1087], as supporting his contention. To make the situation clear we note that the record discloses that appellant was charged by information with obtaining money by false pretenses, which information alleged the facts set forth in the accusation. The defendant was acquitted by the verdict of the jury. Here the appellant is accused of unprofessional conduct. Assuming that the facts did not constitute the offense of obtaining money by false pretenses, it does not follow that he was not guilty of unethical acts. Had the accusation charged a violation of the laws of the state in a matter distinct from the attorney's unprofessional conduct, committed in his private capacity and not by virtue of his office as an attorney, then the authorities upon which appellant relies would necessarily be conceded great persuasive force. And some of them have a bearing upon the impropriety of proceeding to try the disbarment charge before the criminal complaint, but otherwise they apparently have no application.

There are a number of assignments of error relating to the reception or rejection of testimony and the refusal of the court to dismiss the proceeding. It is unnecessary to comment upon any of them herein, other than one, for the reason that the accused attorney took the stand after all of the pleadings, including the affidavit of Mrs. Spaulding, had been introduced and gave his own version of his preparation of the affidavit and the interview with Judge

Reeve in these words: "I dictated the affidavit to my stenographer; she wrote it, and the next day, Saturday, I took it to the presiding judge, Judge Reeve. There were, no doubt, a number of attorneys waiting; there was no unusual hurry any more than there is upon any other day of the week at the presiding judge's bench, but there were other lawyers waiting. I presented the affidavit to Judge Reeve, and I said. 'This case has been tried; the judgment has not yet been rendered. This money was deposited in court some time ago, and has not yet been accepted, and my client wants to withdraw it.'

"Judge Reeve asked me absolutely nothing further about the case in way, shape, nor form." Here in the words of the appellant is sufficient confession of his dereliction of duty to warrant the court, in conjunction with the documentary evidence, to enter the judgment complained of. From his own mouth comes the statement that he failed to communicate to the court the true facts concerning the litigation. In view of this testimony and the unprejudicial nature of the assignments we are not disposed to unduly lengthen an opinion already extended.

We cannot summarily dismiss appellant's contention that it was error to permit Judge Reeve to testify "that had said facts been disclosed to said Honorable Sidney N. Reeve by said Walter Gould Lincoln at that time, said Honorable Sidney N. Reeve would have refused to sign the order permitting the withdrawal of said funds and the payment thereof to Estelle R. Spaulding." The testimony thus introduced was, on account of the then illness of Judge Reeve, in affidavit form with the stipulation of all parties that he would testify in accordance with the averments thereof if he were present in court, the defendant reserving the right to object to the portion just quoted on the ground that it was the opinion and conclusion of the witness. The objection is not well founded. It is always permissible under a well-known rule of evidence to ask a witness who claims to have been defrauded by the false representations of another, whether he relied upon the statements and representations of the latter. The testimony given here was of the same import. Furthermore, the trial judge was justified in drawing a like inference from the facts of the case upon the theory that a judge of one de-

partment would not knowingly render the judge who tried the case impotent to carry out his announced decision.

Judgment affirmed.

Craig, Acting P. J., concurred.

Works, P. J., being absent, did not participate in the foregoing opinion.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 17, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 20, 1930.

All the Justices present concurred.