## HANBACK v. DISTRICT OF COLUMBIA.
### No. 134.

Municipal Court of Appeals for the District of Columbia.

Dec. 17, 1943.

Jesse Lee Hall, of Washington, D. C., for appellant.

Vernon E. West, Principal Asst. Corporation Counsel, of Washington, D. C., with whom Richmond B. Keech, Corporation Counsel, and Milton D. Korman, Asst. Corporation Counsel, both of Washington, D. C., were on the brief, for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

Appellant was convicted of operating a rooming house without having first obtained a license. He was sentenced to pay a fine of $25 or serve twenty-five days. He immediately paid the fine and three days later filed with this court an application for appeal. The application was opposed by the District on the ground, among others, that payment of the fine had made the case moot. We granted the application in order to decide this question of general importance.

It has long been settled in this jurisdiction and in the federal courts that an appellate court will not review a moot case. This court, in Price v. Wilson, D. C.Mun.App., 32 A.2d 109, said: "The applicable law was clearly stated many years ago by the Supreme Court in Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 133, 40 L.Ed. 293: 'The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"

The authorities are not in agreement on the right of appeal in a criminal case where the judgment imposed has been satisfied by payment of a fine. In 24 C.J.S., Criminal Law, § 1668, it is stated: "According to the weight of authority, however, where accused in a criminal case voluntarily pays the fine imposed on him, he waives his right to an appeal, or to a review by certiorari." In 2 Am.Jur., Appeal and Error, Sec. 231, it is said that "in a majority of the jurisdictions the view is taken that a voluntary payment of the fine terminates the action and precludes a review of the conviction." The cases on the question are collected in annotations in 18 A.L.R. 867, and 74 A.L.R. 638.

Upon conviction appellant could have stayed the execution of the judgment, pending final action on his application for appeal, by entering into a recognizance. This procedure is provided by Code, Section 17—103; and though the section in terms applied to the former practice of applications for writs of error to the Police Court, now replaced by the Criminal Division of the Municipal Court, from the United States Court of Appeals, the same practice is followed on appeals and applications for appeal from the Municipal Court to this court. Neither this court nor the Municipal Court has promulgated a different or contrary rule. Appellant made no attempt to secure a stay of the judgment by such procedure, nor does he contend that he could not have done so. In view of the established practice we must assume that he might have stayed judgment. Instead he complied with one of the alternative penalties of the judgment. Payment of the fine, in view of his failure to attempt to stay the judgment, was voluntary.

A complete satisfaction of the judgment was effected by payment of the fine. In Re Bradley, 318 U.S. 50, 63 S.Ct. 470, 471, the petitioner was sentenced to six months imprisonment and payment of a fine of $500, though legally the sentence could be only a fine or imprisonment. After payment of the fine, the trial court, realizing that the sentence was erroneous, attempted to amend it by omitting the fine and retaining only the imprisonment. The Supreme Court held that upon payment of the fine the petitioner was entitled to be free from further imprisonment, saying: "When, on October 1, the fine was paid to the clerk and receipted for by him, the petitioner had complied with a portion of the sentence which could lawfully have been imposed. As the judgment of the court was thus executed so as to be a full satisfaction of one of the alternative penalties of the law, the power of the court was at an end."

If payment of the fine satisfies the judgment for one purpose, it satisfies it for all purposes. Can we review a fully executed and satisfied judgment? Whatever may be the rule in the state courts, we think we must be guided by the recent opinion in St. Pierre v. United States, 319 U. S. 41, 63 S.Ct. 910, 911, 87 L.Ed. 1199. There, appellant had been sentenced to a term of imprisonment for criminal contempt in refusing to answer a question put to him before a grand jury. The District Court and the Circuit Court of Appeals, 2 Cir., 132 F.2d 837, denied him bail; he did not apply to the Supreme Court for a stay; and when the case reached the Supreme Court appellant had served his sentence. The court said: "We are of opinion that the case is moot because, after petitioner's service of his sentence and its expiration, there was no longer a subject matter on which the judgment of this Court could operate. A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it. (Citations) The sentence cannot be enlarged by this court's judgment, and reversal of the judgment below cannot operate to undo what has been done or restore to petitioner the penalty of the term of imprisonment which he has served."

In the case before us the judgment could be satisfied by service of sentence or payment of fine. Either effected a final termination of the case. Payment of the fine here was no more involuntary than was service of time in the St. Pierre case; and we can no more restore to appellant the fine he has paid than the Supreme Court could restore to St. Pierre the time he had served. It may be that if we reversed appellant could recover his fine through some administrative proceeding but neither we nor the trial court could order the District to restore to him the fine he has voluntarily paid.[1]

It may be said that appellant did not pay the fine with the intention of thereby complying with the judgment and terminating the proceeding. However, he made no protest when he paid the fine and gave no notice of an intent to appeal. He may not have intended taking an appeal when he paid the fine, and later changed his mind. At least, no claim is made that the payment was made by mistake. Whatever his intention was is not material, the material fact being "the undisputable fact that his action, however, induced, has left nothing

---

[1] All fines paid under judgments of the trial court immediately become the property of the United States or the District of Columbia, according to the charge upon which the fine is adjudged. Code 1940, § 11—606.

*to litigate."* Brownlow v. Schwartz, 261 U.S. 216, 43 S.Ct. 263, 264, 67 L.Ed. 620.

The authorities permitting appeals where fines have been paid, and in some instances even where sentences have been served, say the appeal should be allowed to give appellant an opportunity "to clear his reputation," to "undo the disgrace and legal discredit," to be "relieved of the odium and disgrace," and to "remove the stigma" of the convictions.[2] This view was urged on the Supreme Court in the St. Pierre case but the the court rejected it, saying: "Petitioner also suggests that the judgment may impair his credibility as witness in any future legal proceeding. But the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy for appellate review. Since the cause is moot, the writ will be dismissed."

Appeal dismissed.

RICHARDSON, Chief Judge (concurring).

Because of the importance of a question involved, I desire to state my reasons for concurring in the foregoing opinion. I have no doubt of the power of the Municipal Court to suspend the operation of its judgments in civil cases or to admit to bail in criminal actions, requiring and accepting a bail bond, a supersedeas, or a deposit of money. I think it is the right and duty of the Criminal Division, where appellant was convicted, to accept a bail bond or deposit in every case where the sentence imposed can be satisfied by payment of a fine. Nor do I doubt the power of our own court or its duty to release pending an appeal in any case if the Municipal Court should refuse to act or should require security in an amount we would regard as excessive.

This power is inherent in courts of record. It expresses a part of the framework upon which our statutory law rests: "The statutes of the United States have been framed upon the theory that a person accused of crime shall not, until he has been finally adjudged guilty in the court of last resort, be absolutely compelled to undergo imprisonment or punishment, but may be admitted to bail, not only after arrest and before trial, but after conviction, and pending a writ of error." [1]

The right to bail is a part of our common law, inherited from the procedure universal in England centuries before the founding of our country. It was so recognized in the states prior to the enactment of statutes on the subject.[2] It is a power which exists in the federal courts without authority of statute or rule.[3]

Perhaps a specific rule describing the manner and form of proceeding to secure a release on bail pending appeal should be adopted. However, the Criminal Division of the Municipal Court has continuously since its reorganization as of July 1, 1942, admitted to bail pending appeal, with our knowledge and tacit approval, with the result that this is the first case in which we have had to consider the legal background of its action, and in this case bail was neither asked nor refused.

CAYTON, Associate Judge (dissenting).

Must the defendant suffer because the judges have failed to enact a procedural rule to fit his case? Must he lose his right to be heard on appeal because the courts— the Municipal Court and this Court—have omitted to prescribe how a defendant in a misdemeanor case can manage to stay out of jail while his appeal is pending?

There was such a rule, clear and definite, when these cases were tried in the old Police Court, and the review was by the United States Court of Appeals. Then the statute, Code 1940, 17—103, provided that a defendant seeking a review of his conviction should enter into a recognizance to

2 State ex rel. Lopez v. Killigrew, 202 Ind. 397, 174 N.E. 808, 810, 74 A.L.R. 631; Commonwealth v. Fleckner, 167 Mass. 13, 44 N.E. 1053; People v. Marks, 64 Misc. 679, 120 N.Y.S. 1106, 1109; Roby v. State, 96 Wis. 667, 71 N. W. 1046, 1047.

1 Hudson v. Parker, 156 U.S. 277, 15 S.Ct. 450, 453, 39 L.Ed. 424.

2 Mozorosky v. Hurlburt, 106 Or. 274, 198 P. 556, 211 P. 893, 15 A.L.R. 1076; Ex parte Alexander, 59 Mo. 598, 21 Am. Rep. 393; Everly v. State, 10 Ind.App.

15, 37 N.E. 556; State v. McNab, 20 N.H. 160; State v. Satterwhite, 20 S. C. 536; Commonwealth v. Green, 12 Mass. 1.

3 Wright v. Henkel, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948; Hudson v. Parker, supra. The eighth amendment to the Constitution providing that "excessive bail shall not be required, nor excessive fines imposed" implies that the right to bail required no express guaranty. United States v. Brawner, D.C. W.D.Tenn., 7 F. 86.

assure his appearance in court if the appeal was denied.

The District contends that the same method should have been followed by defendant in this case. But the Police Court has been legislated out of existence, and with it the method of review provided by the cited section. That section referred exclusively to reviews by the United States Court of Appeals for the District of Columbia (formerly the District of Columbia Court of Appeals). It cannot be said to have applied to this court which was not then in existence. The section has been rendered completely inoperative by the Act of Congress of April 1, 1942,[1] reorganizing the Municipal Court, vesting the reviewing power in this court, and making appeal a matter of right (with two exceptions noted in the margin).[2] By the Act, the Municipal Court was directed to prescribe. rules governing the practice in the new court; but no such rules have yet been made. Furthermore, this court was authorized "generally to regulate all matters relating to appeals, whether in the court below" or in this court; but we have made no rule governing this situation. The result is that there is now no requirement for a recognizance, and indeed no authority in an individual judge (in the absence of a formal rule of court) to require such a recognizance.

In the few instances where the old procedure has been followed, it was extrajudicial in nature, for it was without authority of statute or rule. The majority refers to it as an "established practice"; but I doubt that a procedure followed in a handful of cases can establish a practice. Moreover "the power to admit to bail is not a mere matter of practice." United States v. Curran, 2 Cir., 297 F. 946, 952, 36 A.L.R. 877. It depends upon the authority of a statute, or as here, upon rules adopted pursuant to statute.

We thus find a hiatus in the procedure for perfecting an appeal in this type of case. This requires us to prescribe by decision a procedural method to govern such situations, at least until a rule of court is adopted.

Some twenty years ago, the District of Columbia (now United States) Court of Appeals had before it a situation almost exactly like this one. Appeals had previously been taken from the Municipal Court to the then District of Columbia Supreme Court, but the Act of March 3, 1921, 41 Stat. 1312, removed such jurisdiction to the District of Columbia Court of Appeals, and provided a review by petition for writ of error. The Act did not provide for a cost bond; nor was there then any rule of court requiring it. The appealing plaintiff, apparently relying on a Court of Appeals rule requiring cost bonds on appeal from the District Supreme Court, filed a cost bond; but he was several days late in doing so under that rule. Defendant moved to dismiss the writ of error. The Court of Appeals expressly overruled the motion to dismiss and proceeded to hear the case on the merits. The Court said: "* * * until such rule [for a cost bond] is promulgated it seems clear to us that the requirement of a cost bond for appeals from the Supreme Court should not be applied to writs of error to the municipal court, and that a writ of error once granted to a plaintiff without a cost bond * * * *should be entertained and decided on its merits.*"[3] (Italics supplied.) That decision is binding authority here. Indeed there is stronger reason for adopting the ruling here. In that case the Court expressed some doubt whether a rule would cover the situation, while the statute here involved expressly *directed* the Municipal Court, and authorized this court, *to make rules governing the new practice.* And it is only because of the failure of either court to act that this situation presents itself.

The majority says that we must refuse to consider or decide the merits of the appeal, because we cannot restore the fine to appellant. I do not concede that we are so impotent, or that the District would refuse to honor our judgment, or that of the trial court entered on our mandate. I assume that such judgment would be given its natural and inescapable effect. For is there anything so breathtaking or revolutionary about remitting a fine? If we were to reverse, the fine would necessarily be regarded as illegally collected and would be subject to be repaid out of funds in the

---

[1] Code 1940, § 11—751 et seq.

[2] The exceptions are provided in Sec. 7 (a) of the Act, Code 1940, 11—772 (a), and cover civil cases heard in the Small Claims Branch, and criminal cases in which the penalty imposed is less than $50. This case is in the latter group.

[3] George v. Capital Traction Co., 54 App.D.C. 144, 295 F. 965, 969.

hands of the District of Columbia. We should judicially notice that the District Government regularly seeks and obtains appropriations to cover refund of moneys "erroneously collected." (See, for example, Vol. 42, "Acts of Congress affecting the District of Columbia", page 8, where $65,000 was appropriated for such purposes.) But even if that were not so, I think it is a question not before us and which we need not consider or decide. See Johnson v. State, 172 Ala. 424, 55 So. 226, Ann.Cas.1913E, 296; Barthelemy v. People, 1842, 2 Hill, N.Y., 248, 255; Page v. People, 1878, 99 Ill. 418, 425.

The St. Pierre case, cited by my colleagues, does not apply here because: (a) That involved a jail sentence; this involves a fine of $25; (b) that involved a charge of contempt in a grand jury proceeding; this involves a mere municipal ordinance;[4] (c) there the defendant could have purged himself of the contempt at any time; here the conviction left defendant with no alternative except that of paying the fine; (d) there, there was an established procedure by which he might have applied for bail to the Supreme Court; here there was no procedural rule by which he could have obtained bail; (e) there, the sentence having been completely served, there was no subject matter upon which the judgment of the Court could operate; here the question is wide open for decision.

It may be said that he should have refused to pay the fine and when he found himself in jail, instituted habeas corpus proceedings to test out the legality of his detention. But it is utterly unreasonable to require such an elaborate, expensive procedure in a case involving a mere local ordinance. He had a right to come to us for a disposition of his appeal.

What, then, was his alternative? Only to pay the fine. That he paid it under compulsion can hardly be doubted. As was said by Justice Holmes, many years ago, in Com. v. Fleckner, 167 Mass. 13, 44 N.E.

1053: "We should be slow to suppose that the legislature meant to take away the right to undo the disgrace and legal discredit of a conviction * * * merely because a wrongly convicted person has paid his fine or served his term."

To the same effect is the law in his jurisdiction, where our highest court, in District of Columbia v. Gardiner, 39 App.D. C. 389, 391, refusing to dismiss an appeal in an analogous situation, said: "It is to be presumed that the fine was immediately paid to escape the alternative penalty of imprisonment, and was received by the proper officer of the court in the performance of his duty under the judgment. It does not appear that it was paid to, or accepted by, the District of Columbia so as to work a discharge from all the consequences of the judgment * * *."

In a more recent case the same view was taken by the Circuit Court of Appeals for the Fifth Circuit, which in Hartwell v. United States, 107 F.2d 359, 360, held "that the payment of the fine was not, and did not work, an abandonment of the appeal * * *."

Here, there is not the slightest showing of voluntariness or any other circumstance from which a waiver of appeal can be deduced from his conduct. On the contrary, the very act of noting the appeal belies the suggestion that he acquiesced in the judgment.

For decades defendants in these cases were without an appeal of right. By the Municipal Court Act of April 1, 1942, cited above, Congress reestablished the right of appeal in all cases (except those noted in footnote 2, supra) and created this court as the reviewing tribunal. We were charged with the duty of providing a simple, expeditious method of review. At least until a rule of court is adopted to fit these situations, I think we must give the Congressional intent its full and natural effect and not extinguish in limine the right to be heard on the merits of the appeal.

---

[4] Discretion in allowance of bail after conviction is more freely exercised in misdemeanor, than in felony cases. In re Williams, 54 App.D.C. 65, 294 F. 996.